In the Matter of the Application of ROBERT B. ROTHFELD and Others, as Committee of the Person and Estate of ALFRED ROTHFELD, an Incompetent Person, Petitioners, for an Order Pursuant to Article 78 of the Civil Practice Act, against MARK GRAVES and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, April 29, 1942.

*Kurzman & Frank* [*Samuel B. Seidel* and *Donald L. Newborg* of counsel], for the petitioners.

*John J. Bennett, Jr.; Attorney-General* [*Wendell P. Brown* and *John C. Crary, Jr., Assistant Attorneys-General,* of counsel], for the respondents.

FOSTER, J. This is a proceeding to review a determination of the State Tax Commission which held the income of an incompetent, admittedly a domiciliary of New York but living elsewhere, to be taxable. Within limitations not pertinent here an income tax is imposed upon every resident of the State. The statute, however,

in defining a resident marks out this exemption: " The word ' resident ' applies only to natural persons and includes any person domiciled in the State, except a person who, though domiciled in the State, maintains no permanent place of abode within the State, but does maintain a permanent place of abode without the State, and who spends in the aggregate not to exceed thirty days of the taxable year within the State." (Tax Law, § 350, subd. 7, as amd. by Laws of 1934, chap. 462, and Laws of 1935, chap. 286.) The question presented is whether the incompetent maintains a permanent place of abode without the State within the meaning of the statute.

The incompetent resided with his mother in the city of New York until her death in 1917. A committee was appointed for him in 1920 by the Supreme Court of this State. He was cared for by a female nurse and when she married, some time between 1918 and 1920, he was taken by her to her new home at North Adams, Mass. A year later she died, and her husband, Lucius C. Yeaw, took over the duty of caring for the incompetent, and the latter has lived with Mr. Yeaw at North Adams ever since. They live in a one-family private dwelling, owned by Mr. Yeaw, and the expenses of the house, including taxes and an automobile registered in Mr. Yeaw's name, are paid by the committee of the incompetent. Mr. Yeaw, who has no other business or occupation, receives about $6,000 a year for caring for and maintaining the incompetent. No living quarters are maintained for the incompetent in this State, and he does not spend more than thirty days here in any one year. Reports are regularly made to the Supreme Court of New York county as to his welfare and the manner in which he is maintained. No income taxes are paid in the State of Massachusetts for or on his behalf.

Do these facts make the statute applicable to the situation of the incompetent? Since it creates an exemption from taxation to a particular class of persons the statute must be strictly construed and all doubts and ambiguities resolved in favor of the State. (*People ex rel. Central Union Trust Co.* v. *Wendell,* 197 App. Div. 131; *People ex rel. Froelick* v. *Graves,* 259 id. 30.) Applying this test, I think the statute contemplates only those who by their own volition choose and maintain a permanent place of abode without the State. The incompetent does not come within this classification. He remains under the control of the courts of this State where he was adjudged an incompetent and where it is conceded that he is still domiciled. His abode in Massachusetts is not a result of his own volition at all; indeed, as an incompetent and from a legal standpoint, he is incapable of making a choice. The fact

that he lives there is due solely to considerations personal to his paid attendant, and this is insufficient to satisfy the statute, the intent of which is to include. only an abode outside the State deliberately and permanently maintained by the one who is to be relieved of tax liability.

The determination of the Tax Commission should be confirmed, without costs.

HEFFERNAN and SCHENCK, JJ., concur; CRAPSER, J., dissents, in an opinion in which HILL, P. J., concurs.

CRAPSER, J. .(dissenting). This is a proceeding under article 78 of the Civil Practice Act, brought by the committee of Alfred Rothfeld, an incompetent person, against the respondent State Tax Commission to review a determination denying resettlement of the incompetent's personal income tax for 1938 and denying refund of the tax paid.

The incompetent taxpayer, Alfred Rothfeld, resided in New York city with his mother until her death in 1917. Then it became necessary to have a committee appointed because of his interest in her estate. The committee was appointed by the Supreme Court, New York county, in 1920 and at present consists of the brothers of the petitioner herein. The incompetent's domicile was and is in the State of New York. Between 1918 and 1920 the incompetent had been taken to North Adams, Mass., because the nurse who had been caring for him married one Lucius C. Yeaw and removed to his home at that place. A year later Mrs. Yeaw died and her husband took over the duties of caring for the incompetent. They live in a one-family private dwelling owned by Mr. Yeaw. The expenses of the household, including taxes and an automobile registered in Mr. Yeaw's name, are paid by the committee and Mr. Yeaw receives nearly $6,000 a year for his services in maintaining the incompetent, having no other business or occupation. The furnishings likewise belong to Mr. Yeaw. No quarters are maintained for the incompetent in this State and he does not spend more than thirty days here in any year.

Reports are made to the Supreme Court, New York county, as to the incompetent's welfare and " the manner in which he is maintained." No income taxes are paid to the State of Massachusetts.

The taxpayer suffers from dementia præcox but his condition has not grown worse since 1920. The petition alleges that this is an incurable mental disease and respondents' answer denies knowledge or information sufficient to form a belief as to such allegation. The only evidence offered on this point was an excerpt read by

petitioners' attorney at the formal hearing from an affidavit of a physician made in the incompetency proceeding in 1920, to the effect that the ailment " is practically always incurable."

The claim for refund was denied after an informal hearing on the ground that maintenance by someone else of a place of abode, in which an incompetent domiciliary of the State of New York is cared for, was not sufficient compliance with the statutory exemption to relieve the latter from taxation under article 16. The determination of the Tax Commission denying application for revision after a formal hearing gives rise to this proceeding.

The claim here made upon the facts involved presents the single question of whether petitioners' incompetent, admittedly a domiciliary of New York, maintained a permanent place of abode elsewhere so as to fall within the exemption from tax made by the definition of " resident " in subdivision 7 of section 350 of the Tax Law.

Subdivision 7 of section 350 of the Tax Law (as amd. by Laws of 1934, chap. 462, and Laws of 1935, chap. 286) reads in part: " The word ' resident ' applies only to natural persons and includes any person domiciled in the State, except a person who, though domiciled in the State, maintains no permanent place of abode within the State, but does maintain a permanent place of abode without the State, and who spends in the aggregate not to exceed thirty days of the taxable year within the State." As amended by chapter 462 of the Laws of 1934, the section was given retroactive application to January 1, 1919.

Alfred Rothfeld, the incompetent person, is fifty-nine years old and was never married. He went to North Adams, Mass., in 1918 or 1920; he was already in North Adams when the committee was appointed. He has no permanent or semipermanent or partly permanent quarters of any kind with the committee or in any other place in the State of New York. All his clothes and personal belongings are kept in North Adams. He owns no furniture or furnishings of any kind. All of these conditions were true in 1938; there has been no place in New York State since 1920 where he had a place of residence or a place of abode. He comes to New York once every three or four years for a visit of two or three days and during such visit is a transient guest at a hotel.

It is conceded that the taxpayer is domiciled in New York although actually living in Massachusetts even before he was adjudged incompetent by the New York court.

The committee of an incompetent or the guardian of an infant may consent to the establishment of residence for such incompetent or infant in another place. We do not understand that the incom-

petent can establish a domicile other than that which existed at the time that his incompetency was adjudged. (*Matter of Curtiss*, 199 N. Y. 36; *Matter of Robitaille*, 78 Misc. 108; *Commonwealth* v. *Kernochan*, 129 Va. 405; 106 S. E. 367.)

The guardian cannot cause the ward's domicile to be changed to a place in a State other than the one in which the appointment was made. (Restatement, Conflict of Laws, § 40.)

It is certain that Alfred Rothfeld was domiciled in the State of New York where his committee was appointed and where they lived. It is also clear that he maintains no permanent place of abode within the State but there is maintained for him a permanent place of abode without the State and that he does not spend in the aggregate thirty days of a taxable year within the State.

He is entitled to the exemption that he claims and the determination under review should be annulled and the tax refunded, with fifty dollars costs and disbursements.

HILL, P. J., concurs.

Determination confirmed, without costs.