In the Matter of WILBUR J. GUYETTE, JR., Respondent, against SHERLOCK E. HALEY, as Judge of Clinton County Children's Court, Respondent. LOU A. G. DOVEL, Intervenor-Appellant.

Third Department, September 21, 1955.

*Orville R. Dunn* for intervenor-appellant.

*Harold F. Tucker* for Wilbur J. Guyette, Jr., respondent.

BERGAN, J.  In 1943 Wilbur Joseph Guyette, Jr., and Lou Ada Dick were married at Denver, Colorado.  Thereafter they lived in New York together.  Two children were born in this State, one now about eleven years old and the other about seven years old.  On December 28, 1952, the parties separated.  The wife took the two children with her and went to Colorado where she had resided before the marriage.  The husband continued to reside in New York.

After the wife and the children had been in Colorado for several months, the wife instituted a proceeding in the District Court of Denver which has a general jurisdiction in Colorado which includes the authority to make provision for the care and custody of children.  The proceeding resulted in a decree April 23, 1953, awarding custody and control of the children to the wife and directing the husband to pay $120 a month for the support of the children.

The wife then took the children to Wyoming, at a date which does not appear on the record before us, and there instituted in the Wyoming District Court an action for divorce against the husband.  No personal jurisdiction of the husband was obtained by the Wyoming court and he did not appear in the action.  On December 12, 1953, the Wyoming court entered a judgment of divorce against the husband dissolving the marriage.  The

judgment further provided " That the plaintiff be and she is hereby granted the full and complete care, custody and control of said two minor children ".

During the pendency of the action for divorce in Wyoming there was pending in the New York Supreme Court, Clinton County, an action instituted by the husband for a judicial separation. A judgment by default was entered in the New York action in favor of the husband on December 30, 1953. Personal jurisdiction of the wife was not obtained by the New York court; she was served with process outside the State and she did not appear in the action. We are not advised when this action was instituted but we assume from the sequence of dates that both the Wyoming and the New York actions were pending in parallel courses together during some period before the entry of either judgment.

The New York judgment recited the finding that the wife had abandoned the husband and granted judgment of judicial separation on that ground. It adjudged " that the plaintiff be, and he hereby is, awarded sole care, custody and control " of the children. It is not disputed that the court found the wife as well as the husband to be a resident of New York and to have abandoned the husband in New York.

Within two months of the entry of the Wyoming judgment, the wife having remarried and alleging her residence to be in Denver, filed on February 4, 1954, a complaint in the Colorado District Court as Lou Ada Guyette Dovel for relief which becomes material in the appeal before us. The complaint shows the proceedings for custody both in Colorado and in Wyoming as well as the proceedings before the New York Supreme Court; alleges the husband to be in arrears under the earlier Colorado decree in the sum of $960 and that the children, living in Colorado, are " in dire need of the care, support and financial assistance " applied for and that the husband is able to provide such support.

The complaint asks the Colorado court to act as a court in the " initiating state " under the Uniform Reciprocal Enforcement of Support Act which both Colorado and New York have enacted (Colorado Rev. Stat. [1953], 43-2-1; L. 1951, ch. 151 [Colo.]; L. 1949, ch. 807, as amd. [N. Y.]) and to transmit the papers required by the reciprocal statutes to the Children's Court of Clinton County and that the husband be required to pay for the support of the children.

The District Court ordered that copies of the wife's complaint and certain other papers relating to the Colorado statute be

transmitted to the Clinton County Children's Court "for appropriate action under this act and under the Uniform Reciprocal Enforcement of Support Act * * * of New York" and that the husband "be compelled to furnish support." This is in conformity with the procedural requirement of New York's statute. (§ 6.) The underlying policy of the State so far as it is material here is expressed in section 3. It is that "A husband in one state is hereby declared to be liable for the support of * * * any child or children under seventeen years of age * * * residing or found * * * in another state having substantially similar or reciprocal laws".

The statute sets up carefully framed safeguards by which the husband in New York may controvert the allegations of the complaint in the initiating State and authorizes the entry of such an order granting or denying a direction for support as may seem proper to the New York court on a fully developed record permitting examination and cross-examination of witnesses by deposition or interrogatories between the two States. (§ 6.)

The Clinton Children's Court on receiving the Colorado order of reference issued a summons which was served upon the husband who appeared with counsel and objected to the jurisdiction of the court by virtue of the prior judgment of separation in the Supreme Court. While his motion for dismissal on this ground was pending undetermined, the present article 78 proceeding was instituted by the father against the Children's Court Judge to prohibit him from acting in the matter of support of the children.

A final order has been entered by the Special Term prohibiting the Children's Court Judge from acting in the matter of the support of the children and restraining him "from continuing jurisdiction". The final order of prohibition is without prejudice to the wife's right to reapply for relief in the event the judgment of separation shall be modified in respect of the custody of the children. From this order the intervenor appeals.

The existence on the record of the outstanding New York judgment of judicial separation awarding the husband custody of the children creates the problem. Without it the court would at once proceed to make inquiry into the question of the husband's ability and obligation to support the children in Colorado in pursuance of our undertaking under the terms and authority of the reciprocal statute to which this State has given adherence.

The power of the New York Supreme Court to adjudicate the custody of children in an action between husband and wife is limited to a matrimonial action (*Finlay* v. *Finlay*, 240 N. Y. 429; *Langerman* v. *Langerman*, 303 N. Y. 465; *Davis* v. *Davis*, 75 N. Y. 221). Whether the court had power to grant the judgment of separation after the actual date of the Wyoming judgment of divorce without dealing directly with the jurisdiction of the Wyoming court becomes important here. We are required to afford full faith and credit to the Wyoming judgment (*Williams* v. *North Carolina*, 317 U. S. 287).

There is a narrowly circumscribed group of circumstances where the effect, the result, or the judicial remedy afforded by a prior New York judgment of separation between the parties will be deemed to survive a valid judgment of another State which terminates the marriage itself. We look into these cases to see if they may form an analogue in principle to the case before us.

In *Estin* v. *Estin* (296 N. Y. 308, affd. 334 U. S. 541) a judgment of separation had been granted in New York with jurisdiction of both parties. Thereafter the husband obtained a divorce in Nevada, the jurisdiction of which over the marital status was not challenged; and he thereupon stopped making the payments for support of his wife required under the earlier New York judgment. The wife then applied for an order directing judgment against the husband for the arrears (Civ. Prac. Act, § 1171-b) and such an order was entered and judgment granted.

The Supreme Court sustained the right of New York to enter the judgment. It held that the Nevada judgment of divorce did not necessarily wipe out all the incidents of the marriage; and especially not a valid judgment which New York recognized as a continuing incident to the marriage. What remains in respect of rights enforcible in another State, and what is lost, by such a judgment of divorce is a matter of degree. (Cf. opinion Douglas, J., p. 549.)

It seems of some significance in looking at this case to notice that not only did the right to institute a new judicial proceeding in New York for the enforcement of rights under a prior judgment of separation survive the Nevada divorce; but the rights sought to be enforced, i.e., the payment of alimony under the judgment of separation had accrued after the entry of the Nevada judgment. (See, also, *Kreiger* v. *Kreiger*, 334 U. S. 555.)

Very similar in underlying principle is the decision in *MacKay* v. *MacKay* (279 App. Div. 350). There the wife had obtained a judgment of separation in New York with personal jurisdiction of both parties. The judgment gave the wife alimony for her support and for the support of the children; and divided the custody of the children between the parties. The wife then obtained a judgment of divorce in Nevada granting full custody of the children to her.

It was held that the New York judgment of separation survived in some part. The alimony for the wife contained in the earlier judgment of separation was eliminated; but the alimony for the support of the children was continued; and the provisions of the judgment as to divided custody were continued.

In the same direction is *Jencio* v. *Jencio* (236 App. Div. 707) where it was held that an action for separation does not abate by reason of the entry of a foreign judgment of divorce but continues for certain purposes, as for the determination of the amount of alimony due at the time of the entry of the divorce judgment, and for the purpose " of fixing and enforcing payment by plaintiff of any amount necessary for the support of the children of the parties ". It is, of course, a settled principle of New York law that where it is established that a party was not in good faith a resident of another State, a judgment of separation may be granted here notwithstanding a divorce in such other State. (*Hartman* v. *Hartman*, 282 App. Div. 731.)

The record before us shows a matrimonial action for judicial separation properly commenced with the New York court exercising jurisdiction of the marital status. Not only had both parties resided together and lived with their children in New York; but the wife left the husband here; the husband continued to reside within the jurisdiction; and the New York court found them to be residents. The marriage is conceded to have been valid and subsisting when the action for separation was instituted.

It is true that during its pendency the Wyoming action for divorce was also pending, but there was nothing about the mere institution of an action in another State which requires a New York court to abdicate its own proper jurisdiction. The judgments came in close time sequence. We think the New York action did not automatically abate.

We are not required to carry out literally the rule of giving faith and credit to contemporaneous judicial acts in other States, the existence of which is not reflected in the record before our own courts. The judicial power does not have to stand by and

peer into the distance to see if something is happening elsewhere which will affect what it is then doing. Its business could not well be carried on in this sort of hesitation. It does that which it sees as being within its power to do. Judgments can be remolded in due course and in proper time to reflect such changes and in these circumstances they stand good until changed. We think that there was jurisdiction on the face of the record then before it to authorize the entry of the New York judgment of separation.

It is a somewhat closer question, however, to determine whether the New York court, thus exercising a jurisdiction over the marital status, had jurisdiction also as an incident to its judgment, to award to the husband the custody of the children, not personally then within the jurisdiction; but we think that prima facie jurisdiction also appears or must be presumed on the record before us.

We recognize at once that if it is established that one parent resides with children in another State the New York court does not have the power to make different directions with regard to custody without acquiring either personal jurisdiction of the absent parent or jurisdiction of the children within New York (*May* v. *Anderson,* 345 U. S. 528). But there may be circumstances where a parent is absent from New York but still domiciled or resident therein in which the court might have some jurisdiction of children (p. 533). A New York court would have prima facie jurisdiction where residence or domicile of the absent parent continued in a temporary absence with no change of domicile or residence.

But unless the wife in the case before us is shown by the husband not to have been a resident of or domiciled in Colorado, the decree of the court of that State must lead us to modify our own judgment conformably. The problem primarily is one of our own domestic procedure, i.e., where the inquiry testing jurisdiction is to be made and what court is to pass on the jurisdictional issue. A measure of consistency in our judgments and orders ought to be maintained to avoid conflict between the New York Supreme Court and the New York Children's Court on the same subject.

We think it is preferred practice to test the jurisdiction to grant the judgment of separation in the Supreme Court, which granted it; and by appropriate application under a special appearance in that action itself, rather than collaterally in a proceeding to enforce support in a court exercising only a summary jurisdiction.

In the cases where similar issues of jurisdiction have been raised in New York it will be noticed that they have been considered in the action itself by a party in interest. (*Marshall* v. *Marshall*, 280 App. Div. 814, affd. 304 N. Y. 956; also 281 App. Div. 976, 977; *May* v. *May*, 233 App. Div. 519; *Leitman* v. *Leitman*, 284 App. Div. 959.) These decisions do not sustain a right on the part of the wife in the case before us to disregard the formal judgment of the Supreme Court and proceed as though it had no existence.

In every collateral attack upon our own judgments in a court of general jurisdiction we, of course, accord a prima facie presumption of authority and we conclude that the judgment of the Supreme Court in respect of the custody of the children of these parties is an adjudication that must be respected in New York while it stands of record and that it is binding on the Children's Court. The statute (Children's Court Act, § 28) directs that its provisions shall not be construed as abridging the jurisdiction of the Supreme Court, and notwithstanding the grant of specific jurisdiction to the Children's Court, " the plenary jurisdiction of the Supreme Court to determine the proper custody of an infant child remains unabridged and unimpaired." (*Matter of MacLaren*, 283 App. Div. 817.)

In proceedings under the Uniform Support of Dependents Act the Children's Court is not limited in the precise jurisdiction given by Children's Court Act, but may rely on the additional grant of jurisdiction in chapter 807 of the Laws of 1949 (as amd.); but there, too, the precaution has been taken in the uniform statute not to impair the jurisdiction of other courts that have had authority to grant pre-existing remedies (§ 8).

It follows that the Special Term had the power in the proceeding in the nature of prohibition against the Children's Court Judge to restrain that Judge from proceeding while the Supreme Court judgment was outstanding, negativing as it did, the relief sought by the wife in the statutory proceeding. We regard it as sound judicial policy to maintain a consistency and a reasonable harmony in the functions of our own judicial establishment. It would be at once fatuous and confusing if one court disposed of a problem properly before it in one way and another court undertook to do something quite different about the same subject. This may sometimes happen in spite of every precaution; but if there is a reasonable procedural path around it, the path should be taken.

On granting the final order of prohibition, the Special Term, as it has been noticed, did so without prejudice to the right of the wife to vacate the order of prohibition and reapply to the Children's Court for relief " in the event the judgment of separation granted in this Court December 30, 1953, shall be vacated or modified as respects the custody of the children, upon proper application therefor." We turn then to the judicial policy which, in our view, would govern a direct application in the action for separation addressed to a modification of the judgment in respect of custody of the children.

We are required not only to afford full faith and credit to the judgment of divorce of the court in Wyoming and to that part of the judgment which decrees that the custody of the children, then before that court, be awarded the mother; but we are required also, when the children are removed to Colorado, to give full faith and credit to the custodial decree and the adjudication of necessity of the District Court of that State. Even acting summarily the Colorado court's adjudication concerning the children resident in that State must be respected. Similar summary adjudications of the New York Family Court, for example, are " binding in that court and upon the parties and final until a different determination be there made." (*Loomis* v. *Loomis,* 288 N. Y. 222, 224, CONWAY, J.)

We owe, however, more to the decree of the Colorado court than merely the negative duty of giving it full faith and credit and the same respect we would accord our own judicial decisions. We have undertaken an affirmative and reciprocal duty to implement its enforcement within the State of New York and we are bound on the formal request of Colorado in a proper case to do so.

For many years it has been remarked as a weakness of our Federal system that the numerous independent judicial establishments of the several States, each with its own rules in airtight compartments and having no unity of co-operative procedural facility, made it easy for a father to escape all effective and summary enforcement of his obligation to support dependent children by the simple stratagem of passing a State line into another jurisdiction. He could be prosecuted criminally and extradited under limited circumstances; but the crudities of this kind of remedy gave little effective comfort to the children entitled to it. Usually when a father was arrested and extradited his ability to provide support thereby promptly terminated.

The uniform reciprocal statute for the support of dependents prepared by the National Conference of Commissioners on Uniform State Laws in 1950 and in an amended form in 1952 is the juridic answer of the present day to the problem of the father escaping a family responsibility by leaving the family in one State and going to another. By 1954 it had won almost a unanimous adoption in all the States and territories. (See notes, McKinney's Cons. Laws of N. Y., Book 65, Part 1, Uncons. Laws [1954 Supp.], § 2111, pp. 50, 51.)

In the absence of strong countervailing circumstances which are not now apparent in the record before us, the Special Term should vacate that part of the judgment which awards custody of the children to the husband, on the special appearance and application of the wife for this purpose.

If a wife abandoned a husband without cause and took children with her against the husband's wishes to live elsewhere in New York we would ordinarily think the welfare of young children would be promoted by leaving them with their mother and would require the father to support them to the extent of his ability. We could, within the State, provide for visitation and divided custody; but in making an order for support under section 6 of the act the New York Children's Court would have the power to attach to its order for support such conditions as to visitation or temporary custody as may be reasonable; and in effect the problem is in those circumstances not a matter of State lines and inharmonious jurisdictions, but of distance and convenience. In this the judicial agencies of the two States are certain to work harmoniously; they have the same object in view.

The application by the wife within the separation action should be governed in general by the principles laid down in *May* v. *May* (233 App. Div. 519, *supra*) where the order made in the separation action maintained by the husband without personal jurisdiction of the wife directed the custody of a child outside the State be given to the husband. In that case the order granting such custody was reversed; in this case the provision of the judgment ought to be vacated. The fact the wife defaulted in the matrimonial action itself is not decisive on custody because the judgment in respect of the care of children is always open for recasting in the light of actual conditions shown upon the application of either party and the default in an action maintained by service outside the State ought not to interfere with appropriate relief in the action.

One aspect or another of the problem arising between States able to exercise a personal jurisdiction of children within their boundaries and States having jurisdiction of the marital status is to be observed in *Michell* v. *Michell* (276 App. Div. 1090); *Matter of Forbell* v. *Forbell* (276 App. Div. 785, and as remitted to Special Term, 198 Misc. 753, affd. 278 App. Div. 953); *People ex rel. Halvey* v. *Halvey* (295 N. Y. 836, affd. 330 U. S. 610), and *Robinson* v. *Robinson* (254 App. Div. 696).

Where there is any doubt upon the question of jurisdiction over custody and support of children, the court in the State in which the children live is entitled to the benefit of a presumptive jurisdiction which New York ought to recognize. (*Williams* v. *North Carolina*, 325 U. S. 226.) It was in this light that Mr. Justice FRANKFURTER read the effect of the second North Carolina case in his concurring opinion in *Halvey* v. *Halvey* (330 U. S. 610, 618, *supra*). The wife is " presumptively entitled " to custody by virtue of the Colorado decree (*Matter of Young* v. *Roe*, 265 App. Div. 858, affd. 290 N. Y. 823).

The order should be affirmed, without costs.

FOSTER, P. J., COON and ZELLER, JJ., concur; IMRIE. J.. deceased.

Order affirmed, without costs.