In the Matter of First Trust & Deposit Company, as General Guardian of the Property of Huntington B. Crouse, III, and Another, Infants, Petitioner, against Allen J. Goodrich et al., Constituting the State Tax Commission, Respondents. (Two Proceedings.)

Third Department, July 9, 1956.

*Gerald H. Henley* and *Matthew R. Quinn* for petitioner.

*Jacob K. Javits, Attorney-General* (*Robert W. Bush* and *James O. Moore, Jr.,* of counsel), for respondents.

FOSTER, P. J. These proceedings have been brought under article 78 of the Civil Practice Act to review income tax assessments for the year 1952, made by the State Tax Commission against two infants who presently live in the State of California.

The parents of the infants both died in the city of Syracuse, New York, on May 14, 1951. For reasons that appear wholly sufficient the Surrogate of Onondaga County appointed a resident of California, and his wife, guardians of the person of each infant. At the same time the First Trust & Deposit Company of Syracuse, New York, was appointed general guardian of the property of the infants. At the time of the parents' death the infants resided in Syracuse and were of course domiciled in the State of New York. After the issuance of letters of personal guardianship they were taken by their guardians to the State of California where they now reside. The Surrogate dispensed with the requirement of a bond, but he retained continuing jurisdiction by designating the clerk of his court, pursuant to section 95 of the Surrogate's Court Act, as a person upon whom service of any process on the guardians might be made if they could not be found within the State of New York.

The income of the children sought to be taxed by the State of New York is derived from sources within this State and amounted to over $26,000 for each child during the year 1952. It appears

that petitioner voluntarily filed California tax returns for the year 1952, and paid taxes in that State on the income of each child.

It is petitioner's first contention that the infants were not domiciled in New York State during the year 1952. Domicile of origin continues until a new one is established as a matter of fact or by operation of law (*Matter of Trowbridge,* 266 N. Y. 283; *Matter of Newcomb,* 192 N. Y. 238). Since the infants were *non sui juris* they were legally incapable of choosing domicile on their own volition. Nor could their guardians, since they were neither natural nor testamentary guardians, change the infants' domicile even though their actual residence was changed (*Seiter* v. *Straub,* 1 Dem. 264; *Lamar* v. *Micou,* 112 U. S. 452). Although there are some expressions to the contrary in *Wood* v. *Wood,* (5 Paige Ch. 596) we do not think they represent the prevailing view today (2 Beale on Conflict of Laws, § 149.1; Restatement, Conflict of Laws, § 37). At least we think it sound to say that such a change could not have been effectuated without a directive of the Surrogate who made the order of appointment.

There is nothing in these proceedings which indicates that the Surrogate intended to change the domicile of the infants by merely appointing nonresident guardians. He retained jurisdictional control so far as he was able to, and moreover he appointed petitioner, a local banking institution, as guardian of their property. This would not indicate any intention on his part to change the domicile of the infants by operation of law. So far as the proof before us is concerned, and within the contemplation of the Tax Iaw, the domicile of the infants remained in this State although their residence became elsewhere (*Matter of Rothfeld* v. *Graves,* 264 App. Div. 54, affd. 289 N. Y. 583; *Matter of Ratkowsky* v. *Browne,* 267 App. Div. 643; *Matter of Thorne,* 240 N. Y. 444). To construe letters of guardianship issued to nonresident persons otherwise would in effect impute to the Surrogate the intent to divest himself of future jurisdiction — an intent which the proof does not reveal.

Petitioner further urges that even if the infants were domiciled in this State they were not subject to tax here in 1952 as they were within the exception in subdivision 7 of section 350 of the Tax Law.

The statute provides that the word "resident" for tax purposes includes any person domiciled in the State, except a person who though domiciled in the State maintains no permanent place of abode within the State but does maintain a permanent place of abode without the State and who spends in

the aggregate not to exceed 30 days of taxable year within the State. Concededly the infants maintain no permanent place of abode within the State and did not spend 30 days of the taxable year herein. The question is whether they maintain a permanent place of abode without the State. We think the answer to this question must be in the negative. The considerations we have already discussed preclude any other answer. To maintain a place of abode requires the exercise of volition or choice of which the infants were incapable (*Matter of Rothfeld* v. *Graves, supra*).

That double taxation is a harsh and unfortunate result may be conceded, but in that connection it should be pointed out that both the *Rothfeld* (*supra*) and *Ratkowsky* (*supra*) cases have been called to the attention of the Legislature (1942, 1944 Annual Reports of the State Tax Commission; N. Y. Legis. Doc. 1943, No. 74, p. 41, and N. Y. Legis. Doc., 1945, No. 61, p. 50).

The determination of the Tax Commission should be confirmed, without costs.

BERGAN, HALPERN, ZELLER and GIBSON, JJ., concur.

Determination of the State Tax Commission confirmed, without costs.