Van Voorhis, J.
This article 78 proceeding concerns the right of New York State to tax the incomes for the calendar year 1952 of two infants, 10 and 8 years of age respectively, who have moved from New York State to live with their personal guardians in California under order of the Surrogate’s Court of Onondaga County. They are sister and brother, and were orphaned by the deaths of both mother and father on May 14, 1951. Their nearest relatives at that time were a paternal grandmother of Syracuse, New York, and a maternal grandmother whose home was in Pennsylvania. The grandparents were not in good health nor in position to assume the actual care and custody of these children. Immediately after the death of the parents, the children went to stay with an aunt, Mrs. Dorothy Crouse Witherill, at Cazenovia, New York. Mrs. Witherill had a son, Liston A. Witherill, who was then about 25 years of age and resided with his wife, Carolyn S. Witherill, and their 2-year-old son at 2047 Walgrove Avenue, Venice, California. A first cousin of these infants, Liston Witherill, was their only relative who was married and in the age group ordinarily best suited to bringing up young children. He and his wife, Carolyn, were willing to become guardians of the person and have these children grow up in their home as part of their family. The children have lived with them in this relationship since the issuance of letters of guardianship of the person on July 11, 1951. These infants maintained no permanent place of abode in the State of New York during the calendar year 1952, nor were they at any time within this State during the calendar year *413 1952. The Witherills have changed their address in California to 721 Thayer Avenue, Los Angeles.
Petitioner, First Trust & Deposit Company, of Syracuse, New York, was appointed guardian of the property of these children. Each is entitled to trust income, on which an income tax has regularly been paid to the State of California. Nonresident income tax returns have been filed in New York State.
The New York State Tax Commission has determined that these children are domiciled in New York State and not in California, and, furthermore, that they are not exempt from New York State income taxation under section 350 (subd. 7) of the Tax Law of New York, which exempts persons who, though domiciled in New York, maintain no permanent place of abode within the State but who have permanent places of abode without the State and spend not to exceed 30 days of the taxable year within the State. These children were not within New York State upon any day within the taxable year, and maintained no permanent place of abode here. Their exemption was defeated under this subdivision on the theory that, although they had lost any permanent place of abode in New York by going to live in California under the letters of guardianship issued by the Surrogate, they have acquired no permanent place of abode in California being bereft of volition due to their infancy, and so, by legal fiction, incapable of acquiring any permanent place of abode elsewhere. It does not appear on what principle the Appellate Division found that their permanent place of abode in New York had been surrendered without another permanent place of abode being acquired. The exemption of section 350 (subd. 7) was held to be inapplicable on the theory that they have no permanent place of abode anywhere. In legal theory infants, under such circumstances, would be condemned to float around in a sort of limbo, without roots in any State, if this reasoning were sound.
Their income appears to be taxable under section 17013 of the California personal income tax law, regardless of the outcome of these proceedings, which includes as residents of California for purposes of taxation 1 ‘ every individual who is in this State for other than a temporary or transitory purpose ”. In the opinion of California counsel these infants are taxable as residents of California, which view is shared by counsel for the California Franchise Tax Board.
*414 In onr view, the New York State Tax Commission and the Appellate Division erred in determining, under the circumstances of this case, that these infants remained domiciled in New York State. From the days of ancient Rome legal experts have been intrigued by the domicile of infants. English and Continental lawyers have written copiously upon the subject. Kent and Story held views, perhaps not entirely harmonious, upon various aspects of the question. Modern textwriters have discussed and differed about it. At common law the domicile of an infant was determined by the father (not necessarily where the father lived) on account of the patria potestas. Upon the father’s death the mother became the head of the family, and the domicile of their infant children attached to hers, and this continues to be the rule even though the mother had been divorced by the father (Matter of Thorne, 240 N. Y. 444). There is difference of opinion concerning what happens if the mother moves to a different State due to remarriage (contrast Matter of Delaney, 282 App. Div. 280, and Lamar v. Micou, 112 U. S. 452, with State Tax Comm. v. Felt, 331 Mass. 63, 67, and Beale, The Conflict of Laws, 1886-1936, 50 Harv. L. Rev. 887, 891). It is settled that an infant cannot change its own domicile (but see Ann., 5 A. L. R. 958, entitled: ‘ ‘ Approximation to maturity as affecting the rule that an infant cannot change his domicil”).
The controversy usually has focused upon whether the guardian can change the domicile of his ward. Chancellors Kent and Walworth took a liberal view of the power of the guardian in this respect (Kent’s Comm., part IV, lect. XXX, p. 227; Wood v. Wood, 5 Paige Ch. 596, 605). Distinctions have been drawn between natural or testamentary guardians, upon the one hand, and merely court-appointed guardians upon the other. In the latter instance, it makes a difference (according to a number of the authorities — including the Appellate Division in this case) whether the guardian acts with or without the order of the Surrogate. In the cases of Seiter v. Straub (1 Dem. 264, 269) and Lamar v. Micou (112 U. S. 452, supra), relied on by the Appellate Division, it is recognized that a natural guardian or a testamentary guardian may change the domicile, the United States Supreme Court stating in the latter case “that a testamentary guardian has the same control over a ward’s domicile as the father, and may *415 change it either from state to state or county to county ” (Ann., 32 A. L. R. 2d 863, 873). Lamar v. Micou also recognizes that if the parents are dead, the grandparents become the natural guardians, and this rule has foundation in early Hew York decisions and other decisions and textwriters (cf. Ann., 32 A. L. R. 2d 863, supra [1953] entitled: ‘ ‘ Domicile of infant on death of both parents: doctrine of natural guardianship ”). A statement is made in the annotation last cited at page 869: 11 A number of cases, applying the doctrine that the domicile of an infant is determined by that of his natural guardian, have held that the grandparents of the infant orphan, occupying the position of his next of kin and having his custody and control, are his natural guardians and may determine his domicile by their own, so long as they act in good faith ” (citing in New York State Matter of Kiernan, 38 Misc. 394).
The situation described is similar in some respects to that presented in White, v. Howard (52 Barb. 294, affd. 46 N. Y. 144), regarding which the same annotator states at page 872: “ But where the minor’s surviving father appointed a testamentary guardian resident in another state, evincing an intention that the child should go there to reside with her guardian, and the child did so and remained in the other state until her death, it was held in White v. Howard * * * that the guardianship changed the child’s domicile from the state of her father’s death to that of her subsequent residence, so as to control the descent of her property upon her death intestate.”
It is said in Kennan on Residence and Domicile (p. 285, citing Delaware, L. & W. R. R. Co. v. Petrowsky, 250 F. 554 [C. C. A. 2d], cert, denied 247 U. S. 508) that where a parent (in the instant case the grandparent) “ surrenders the care and custody of his minor child to one who agrees to assume such care and custody, and to provide for such child for the whole remaining period of his minority # * * the child acquires the domicil of the person who assumes this responsibility ’ ’. In this instance it is not necessary to determine whether a court-appointed guardian of the person is empowered in every case to change the domicile of his ward to another State, as Chancellors Kent and Walworth and other learned judges and textwriters appear to have thought (cf. Matter of Kiernan, 38 Misc. 394, supra; Matter of Robitaille, 78 Misc. 108, 115; Kennan, op. cit., p. 286; Stumberg on Conflict of Laws [2d ed., *416 1951], pp. 49-50; see Erwin Spiro, Domicil of Minors Without Parents, 5 International & Comparative Law Quarterly 196, 203).
Here the paternal grandmother was the natural guardian, and on her petition for that express relief the Surrogate of Onondaga County appointed the Witherills joint guardians of their persons. They were established permanent residents of California at the time of their appointment, which was an open and manifest fact, and the Surrogate’s order in this context is to be construed as having been designed to send these children to California sine die at the instance of their natural guardian who was the paternal grandmother. The maternal grandmother was cited, but no objection to this disposition of these children was made by her or by any party to the proceeding. Cases such as Matter of Rothfeld v. Graves (264 App. Div. 54, affd. 289 N. Y. 583) or Matter of Ratkowsky v. Browne (267 App. Div. 643) regarding the domicile of incompetents are not controlling. The mere transfer of a person to a sanitarium for treatment or confinement on account of mental illness does not alter the legal domicile. Infancy and incompetency are alike in that both involve disability, and in neither instance is the domicile ordinarily capable of being changed by an act of volition on the part of the ward. In this respect infancy and incompetency are similar, but they are not comparable where the domicile of an infant is changed by the natural guardian or by order of the court, as was pointed out by the Surrogate of Kings County in Matter of Webber (187 Misc. 674, 678).
The difference between an infant and an incompetent is illustrated by the facts in this case, where these children were not sent to Westport or Stockbridge for confinement or cure, but to grow up and live in another State. When the Witherills were appointed as guardians of the person, the Onondaga County Surrogate did not expect that these guardians would change their domicile to New York State. The clear purport of his order made at the instance of their natural guardian was that these children should go to California, with the deliberate intention that they should enter a new environment in which they were to spend their formative years, with the manifest idea that they would adapt to the changed surroundings and live in the new community with as much permanency as life *417 affords. They were to be brought up as members of the Witherill family. There was no plan or likelihood that they would return to New York State during minority, and the probability must have been understood to be that after maturity they would continue to live in the locality into which their lives were to be merged. The Appellate Division implied that the Surrogate could change the domicile, the opinion stating that “ There is nothing in these proceedings which indicates that the Surrogate intended to change the domicile of the infants by merely appointing nonresident guardians ”, We think that under the facts of this case the Surrogate did intend to change the domicile, and that this was done in accordance with the recommendation and petition of the natural guardian. The Appellate Division has conceded that what was done deprived these infants of any permanent place of abode in New York State. If what occurred did that, we think that it also gained for them a permanent place of abode in California. Their status as citizens of New York was ended, and, unless we are to be constrained by what Chancellor Kemt called refined and speculative theory even in a day when mobility between the States was less frequent than now, this case should not be decided on a mere fiction that domicile in New York State was retained. The cases agree that the benefit and welfare of the infants is the governing factor. These infants have no interest in maintaining a fictional domicile in New York so as to have the privilege of paying income taxes to both States. Their interest is to be citizens of California which is and was intended to be their permanent home. No question of bad faith or fraud is involved in this change of domicile. The object of all concerned, including the natural guardian and the Surrogate, was to send these children to California indefinitely. If that entails the consequence that their estates would descend according to the intestate laws of California, that would be as it should be. Nobody has a vested right to inherit from them under New York law. This would appear to be an unimportant reason for denying recognition to the actuality.
Even if the domiciles of these infants remained in New York, it would be artificial to deny to them the exemption granted by section 350 (subd. 7) of the New York State Tax Law, upon the sole ground that they do not maintain a permanent place of abode without this State. The material portion of this section *418 is: “ The word ‘ resident ’ applies only to natural persons and includes any person domiciled in the state, except a person who, though domiciled in the state, maintains no permanent place of abode within the state, but does maintain a permanent place of abode without the state, and who spends in the aggregate not to exceed thirty days of the taxable year within the state.” (Italics supplied.)
It is conceded that these children come within this exclusionary clause save only that by legal fiction it has been held that they do not maintain an abode without the State. It seems to us that they maintain a permanent place of abode in California by the same token whereby they ceased to have a permanent place of abode in New York State.
The orders appealed from are reversed and the prayers of the petitions granted, with costs to appellants in all courts.
Conway, Ch. J., Desmond, Dye, Fuld, Froessel and Burke, JJ., concur.
In each proceeding: Order reversed, with costs in this court and in the Appellate Division, and matter remitted to the State Tax Commission for further proceedings not inconsistent with the opinion herein.