194 A.2d 126 (1963)
Betty Moxley STEVENS, Appellant,
v.
William H. BROWN, Appellee.
No. 3290.
District of Columbia Court of Appeals.
Argued July 1, 1963.
Decided October 7, 1963.
*127 D. Robert Cervera, Washington, D. C., with whom Davis & Cervera, Washington, D. C., were on the brief, for appellant.
Harvey B. Bolton, Jr., Washington, D. C., with whom William H. Clarke, Richard W. Galiher and William E. Stewart, Jr., Washington, D. C., were on the brief, for appellee.
Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.
HOOD, Chief Judge.
This appeal is by a mother of an illegitimate child from an order awarding custody of the child to the father. An understanding of the question presented requires a summary of three legal proceedings.
The first proceeding was an action commenced in the District of Columbia by the father against the mother for custody of the child. After a hearing the trial court on March 14, 1960, found in effect that neither the father nor the mother was a fit custodian for the child and ordered that "permanent custody" of the child be awarded to Mrs. Winifred Farris, the child's maternal aunt. At the time of the hearing and order the parents were, and have continued to be, domiciled in the District of Columbia; but at the time of the hearing *128 the child was staying at the home of Mrs. Farris, a domiciliary of Maryland. Mrs. Farris was not a party to the action, but apparently was before the court in some capacity when custody was awarded to her. No appeal was taken from the order.
The second proceeding was commenced by the father in Maryland in 1961 by a petition seeking custody of the child. Mrs. Farris was the only defendant to that action. The petition recited the order of the District of Columbia court awarding custody to Mrs. Farris, but alleged that Mrs. Farris was not providing a proper home for the child, that the father was able to provide a proper home and was a fit person to have custody. After a hearing the Maryland court, on December 15, 1961, ordered that custody be awarded to Mrs. Farris. The father took no appeal.
The third proceeding was brought by the father in May 1962 by a motion in the original District of Columbia proceeding. This motion, entitled "Motion to Change Custody," was served upon the mother and upon Mrs. Farris in Maryland, although the motion did not purport to make Mrs. Farris a party to the proceeding. Mrs. Farris, through counsel, moved to dismiss the motion to change custody on the ground that any relief the father might obtain would have to be in the Maryland court in the proceeding he had instituted there. The trial court denied the motion on the ground that Mrs. Farris was not a party to the proceeding and could become a party only by intervention. She did not seek to intervene and took no further part in the proceeding. The mother did not answer the motion and an attorney was appointed for her. At the hearing her counsel made it clear that she was not seeking custody of the child, but moved that the proceeding be dismissed for lack of jurisdiction. The trial court refused to dismiss, conducted a hearing, made findings of fact and conclusions of law, and ordered that custody be awarded to the father and that the "custodian, Winifred Farris, * * * is directed to turn over custody of the minor" to the father.
About three weeks after entry of the order the father moved to hold the mother in contempt for failure to produce the child and surrender custody to the father. The mother opposed the motion on the ground that the child was in Maryland in custody of Mrs. Farris under order of the Maryland court and that she, the mother, did not have custody and could not surrender custody. Thereafter the motion to hold the mother in contempt was withdrawn.
This appeal by the mother raises the single question of the jurisdiction of the District of Columbia court in the second proceeding before that court. Jurisdiction in custody cases is a somewhat confused subject,[1] but on the admitted facts here we see no occasion for confusion.
In the original or first proceeding in the District of Columbia the father and mother, the contesting parties, both domiciled in the District, were personally before the court. The child, although then temporarily residing in Maryland, was domiciled in the District, as an illegitimate child takes the domicile of its mother.[2] The court clearly had jurisdiction to award custody.[3]
In the Maryland proceeding the father, although domiciled in the District, personally appeared in Maryland and instituted the proceeding. The custodian, Mrs. Farris, domiciled in Maryland, was in court through personal service. The child was physically present in Maryland and was domiciled in Maryland as its domicile had changed from that of its mother to that *129 of its legal custodian.[4] It may be noted here that the mother was not a party to the Maryland proceeding. The contesting parties were the father and the custodian. We think there can be no doubt of the Maryland court's jurisdiction to make an award of custody.[5]
With this background we turn to the third proceeding, the second one in the District. In that proceeding the father and mother, both domiciled in the District, were parties and were the only parties. But neither of them had custody of the child. By previous order of the court custody had been given to Mrs. Farris, a resident of Maryland, and the effect of that order was to remove the child from the jurisdiction of the court and place its custody in the hands of one not personally within the jurisdiction of the court. Lacking jurisdiction of both the legal custodian and the child, the court had no jurisdiction to make an award of custody.[6] This lack of jurisdiction is pointed up by the order itself which directed the custodian, who was not a party and who was not amenable to the court's process, to surrender custody of the child who was also beyond the jurisdictional limits of the court. Contrast that order, which the court could not enforce, with the order of the Maryland court of September 7, 1962, entered while the second District of Columbia proceeding was pending, ordering that the child not be removed from the jurisdiction of the Maryland court without its order.
The father's argument is that the District of Columbia court in the original proceeding had jurisdiction over the child and that the jurisdiction in custody cases is a continuing one. For this proposition he relies largely on Emrich v. McNeil, 75 U.S.App.D.C. 307, 126 F.2d 841, 146 A.L.R. 1146. The facts there were quite different from those here. There all parties were before the court in both the original and supplemental proceedings, and the court ruled that: "So long as theyand especially the childremain subject to the jurisdiction of the District Court, public policy requires that it, * * * shall determine all questions of custody and maintenance." 75 U.S.App.D.C. 310, 126 F.2d 844. The court cited its earlier case of Rosenberger v. Rosenberger, 68 App.D.C. 220, 221, 222, 95 F.2d 349, 350, 351, wherein, after discussing the general rule of continuing jurisdiction, it was said:
"There is a well recognized exception to the general rule, however, in cases involving the custody of infants, namely, that where an infant is physically within the jurisdiction of a court of another state, that court will extend its arms to protect it from injury and contamination, even to the extent, if necessary, of taking it from the custody of guardian or parent."
We must hold that the continuing jurisdiction of the District of Columbia court ceased when by that court's order the child, the subject of the custody proceeding, was removed from the District and placed in the custody of a resident of Maryland. We may note that it is neither improper nor unusual for a court, when it finds such to be for the best interests of the child, to permit or order the removal of the child to another jurisdiction.[7] *130 There was no reason for the District of Columbia court to assume that the Maryland courts would not be equally vigilant in protecting the welfare of the child.[8]
The continuing jurisdiction over custody of the child is in the Maryland court. The father voluntarily went to Maryland and invoked the jurisdiction of the Maryland court. That court, with jurisdiction over the persons of the father, the custodian, and the child, conducted a hearing, denied custody to the father and awarded custody to the custodian then in custody of the child under the District of Columbia order. On a somewhat similar factual situation in Sadler v. Sadler, 234 N.C. 49, 65 S.E.2d 345, 346, it was said:
"Plaintiff is a nonresident of the State of Georgia. Even so, he invoked the jurisdiction of a court of that State. He sought relief in that forum. He was present and voluntarily submitted himself to the jurisdiction of that court with respect of matters within the scope of its power and authority. He, as well as the court below, is bound by the judgment therein entered, at least so long as the children remain in that State."
The order appealed from is reversed with instructions to dismiss the motion for change of custody for lack of jurisdiction.
Reversed with instructions.
QUINN, Associate Judge.
I dissent from the holding of the court that "the continuing jurisdiction of the District of Columbia court ceased when by that court's order the child, the subject of the custody proceeding, was removed from the District and placed in the custody of a resident of Maryland." I cannot agree that the trial court divested itself of jurisdiction by awarding custody to the child's maternal aunt, a friend of the court, who happened to live in Cabin John, Maryland. I think the majority has used a questionable rule of domicile to formulate a hard and fast rule of jurisdiction, neither of which is properly applicable to the case at bar.
According to the majority opinion, the domicile of the child had "changed from that of its mother to that of its legal custodian." Principal reliance for this view is placed on the case of First Trust & Deposit Company v. Goodrich, 3 N.Y.2d 410, 144 N.E.2d 396 (1957). In that case New York had sought to tax the income of two orphaned infants then living in California on the ground that they were domiciliaries of New York. In a prior proceeding, a New York surrogate had appointed a California cousin and his wife as personal guardians of the infants with the understanding that the infants would go to California to live. While the New York Court of Appeals held that the infants had become California domiciliaries and were therefore not subject to the New York income tax, it found it unnecessary to determine "whether a court-appointed guardian of the person is empowered in every case to change the domicile of his ward to another State." Id., 3 N.Y.2d at 415, 144 N.E.2d at 399. The court based its decision on the ground that the surrogate did intend to change the infants' domicile to California, since "[t]he clear purport of his order * * * was that these children should go to California, with the deliberate intention * * * that they would adapt to the changed surroundings and live in the new community with as *131 much permanency as life affords." Id., 3 N.Y.2d at 416-17, 144 N.E.2d at 399.
In the case at bar, I cannot find in the record any "clear intent" that the trial court deliberately sought to change the infant's domicile when it awarded custody to the maternal aunt. The child was not orphaned. Its parents were living and both had strenuously sought custody. It seems clear, beyond peradventure, that either parent would seek to reopen the trial court's decision in the future. In First Trust & Deposit Company v. Goodrich, supra, the nearest relatives were two grandparents and an aunt, all of whom were in no position to care for the children. Hence I do not find the New York case controlling because the record is devoid of any evidence that the trial court deliberately intended to change the child's domicile merely by appointing a nonresident guardian.[1] More importantly, I think the court has applied a domiciliary concept in an improper context.
Custody cases generally arise in one of three contexts. These may be characterized as (1) cases in which a child is before the court for the first time; (2) cases in which a court is asked to recognize and give effect to a custody decree of another jurisdiction, and (3) cases in which a court is asked to exercise its continuing jurisdiction in a custody matter. Each of these contexts presents questions which do not necessarily overlap, and I think the majority has erred by applying a jurisdictional rule[2] without proper regard for the present posture of the case at bar. Here we are not concerned with a case in which a child is before the court for the first time. That issue was disposed of when the trial court exercised jurisdiction in the original proceeding. Neither are we concerned with giving recognition and effect to a custody decree of another jurisdiction. That issue was properly before the Maryland court in the second proceeding[3] when it exercised its jurisdiction as parens patriae to protect an infant physically present within the state. Rather we are concerned with the power of the trial court to exercise a continuing jurisdiction in a case previously before it.
In the District of Columbia express statutory authority exists for the exercise of continuing jurisdiction in custody cases. Section 16-413 provides:
"After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders in those respects."
In Steele v. Steele, 83 U.S.App.D.C. 254, 168 F.2d 562 (1948), a father was awarded custody of a child of the parties. Subsequently, his wife, under questionable circumstances, obtained control of the child. The United States District Court then ordered the wife to redeliver custody to the father and the wife appealed. After disposing of the wife's claim that the order constituted an abuse of discretion, the court continued:
"* * * Nor are we impressed with the claim that the Court in awarding custody to the father lost jurisdiction because the father's residence is located in Maryland just across the borderline *132 of the District. The Court's jurisdiction having already attached, continues undisturbed to the final conclusion of the case. (Citing the above Code provision.)" Id., 83 U.S.App.D.C. at 256, 168 F.2d at 564.
In short, I think the majority has failed to recognize that two courts in different states can have jurisdiction over a custody matter at the same time.[4] Of course, whether that jurisdiction should be exercised in every case is another matter,[5] but I would not follow the hard and fast rule which the majority has applied. Consequently, I dissent.
NOTES
[1] See Annot., 4 A.L.R.2d 7-96.
[2] Restatement (Second), Conflict of Laws § 34 (1958).
[3] Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153.
[4] First Trust & Deposit Co. v. Goodrich, 3 N.Y.2d 410, 144 N.E.2d 396.
[5] Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153; Langan v. Langan, 80 U.S. App.D.C. 189, 150 F.2d 979; Cook v. Cook, 77 U.S.App.D.C. 388, 135 F.2d 945; Mankiewicz v. Mankiewicz, D.C.Mun.App., 177 A.2d 913.
[6] May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221; Oxley v. Oxley, 81 U.S.App.D.C. 346, 159 F.2d 10; Wathen v. Ugast, 79 U.S.App.D.C. 162, 143 F.2d 160 (adoption proceeding); State ex rel. Clark v. Clark, 148 Fla. 452, 4 So.2d 517; Farrell v. Ellsworth, Sup., 52 N.Y.S.2d 513; Rodney v. Adams, Ky., 268 S.W.2d 940; Guyette v. Haley, 286 App.Div. 451, 144 N.Y.S.2d 493; Richter v. Harmon, 243 N.C. 373, 90 S.E.2d 744.
[7] See, e.g., First Trust & Deposit Co. v. Goodrich, 3 N.Y.2d 410, 144 N.E.2d 396, Griffith v. Griffith, 240 N.C. 271, 81 S.E. 2d 918.
[8] See the statement in Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739, 750: "In any event, there is no reason why courts of one state should not be able to `assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child.' Miller v. Schneider, Tex.Civ.App., 170 S. W.2d 301, 303."
[1] The majority concedes, indeed its reasoning requires a contrary result, if it were found that the child's domicile remained in the District of Columbia.
[2] The basis for jurisdiction in custody proceedings has alternatively been said to rest on the domicile of the child, the presence of the child in the jurisdiction, or the in personam jurisdiction of the court over the child's parents. For the reasons set forth infra, I do not think that these theories are properly applicable in the case before us.
[3] Significantly, the Maryland decree, which was almost identical to the original decree, ordered the father to continue making support payments for the child "to the Municipal Court for the District of Columbia, Domestic Relations Branch, as provided in their order D-1910-59."
[4] Sampsell v. Superior Court, 32 Cal.2d 763, 197 P.2d 739 (1948); Stansbury, Custody and Maintenance Law Across State Lines, 10 Law & Contemp.Prob. 819, 830-31 (1944).
[5] See 56 Colum.L.Rev. 630 (1956); Stansbury, supra, note 4 at 831-32.