JAMES DAVIS, M.D., APPELLEE, V. GREGG WRIGHT, M.D., M. ED., DIRECTOR OF THE DEPARTMENT OF HEALTH, AND THE DEPARTMENT OF HEALTH, APPELLANTS.

503 N.W.2d 814

Filed August 6, 1993.   No. S-91-289.

Don Stenberg, Attorney General, and Melanie J. Whittamore-Mantzios for appellants.

William M. Lamson, Jr., and Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

This is an appeal from the judgment of the district court, which on review under Neb. Rev. Stat. § 84-917 (Cum. Supp. 1992) reversed the order of Gregg Wright, director of the Nebraska Department of Health (Director), revoking the license of the petitioner, James Davis, to practice medicine and surgery in the State of Nebraska and revoking his controlled substance registration. The Director and the Department of Health (Department) appealed, alleging as error substantially (1) that the district court erred in finding that the State had failed to prove by clear and convincing evidence that Davis had engaged in a sexual relationship with a patient during the physician-patient relationship and that Davis had fraudulently prescribed controlled substances for a patient, and (2) that the court erred in imposing a disposition against Davis instead of remanding the case to the Director for the appropriate disposition.

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. § 84-917(5)(a). The district court may affirm, reverse,

or modify the decision of the agency or remand the case for further proceedings. § 84-917(6)(b).

(1) An aggrieved party may secure a review of any judgment rendered or final order made by the district court under the Administrative Procedure Act by appeal to the Court of Appeals.

. . . .

(3) . . . [T]he appeal shall be. taken in the manner provided by law for appeals in civil cases. The judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record.

Neb. Rev. Stat. § 84-918 (Cum. Supp. 1992).

This was a disciplinary action brought by Robert M. Spire as Attorney General of the State of Nebraska under the provisions of Neb. Rev. Stat. § 71-147 et seq. (Reissue 1990) against Davis, a physician licensed to practice medicine in the State of Nebraska.

The amended petition, filed on May 31, 1989, before the Director, alleges that Davis practiced psychiatry in Omaha and that in 1978, a 33-year-old female (patient I) placed herself under the medical control of Davis. In about April or May 1982, according to the pleading, Davis asked patient I if she would have a sexual relationship with him. Patient I eventually consented, and thereafter Davis and the patient engaged in sexual activity "on almost every regularly scheduled appointment he had with her until January of 1984." This activity, it is alleged, constituted unprofessional conduct on the part of a practicing physician within the meaning of § 71-147(10); grossly immoral or dishonorable conduct evidencing the lack of fitness to practice medicine and surgery within the state, in violation of § 71-147(2); and practices beyond the authorized scope of medicine and surgery, in violation of § 71-147(5)(b).

Additionally, it is alleged that in February 1980, a 26-year-old female (patient II) placed herself under the medical care and control of Davis, relying upon his professional advice and treatment of her depression and pain as a result of the patient's Crohn's disease. On or about January 7, 1985, as a result of a

complaint that Davis was overprescribing drugs for this patient, which resulted in a conference with an investigator from the bureau of examiners in the Department, Davis agreed that he was prescribing too much medication and would monitor the exact number of drugs patient II was taking daily. Notwithstanding that promise, it is alleged, a male live-in friend of patient II's accompanied the patient to an appointment with Davis, and after the friend complained of back pain, Davis prescribed Percodan and Darvocet for the friend without benefit of a physical examination. The amended petition continues, alleging that although the male friend moved to Philadelphia in September 1985, which Davis knew, and Davis had no further contact with him, Davis nevertheless continued to prescribe these medicines, giving the prescriptions to patient II until July 1987, although no records disclosed that a physician-patient relationship existed between Davis and the friend.

The amended petition goes on to allege that on or about June 26, 1986, Davis wrote four prescriptions for a female friend of patient II's, prescribing Darvocet, Percodan, Valium, and Placidyl, although the friend had never seen Davis as a patient, and that Davis knew that the medications he prescribed in the friend's name would be used by patient II.

The aforementioned acts regarding prescriptions constituted, according to the allegations of the State, the practice of medicine beyond the authorized scope, in violation of § 71-147(5)(b); unprofessional conduct on the part of Davis within the meaning of § 71-147(10); and grossly immoral or dishonorable conduct evidencing the lack of fitness to practice medicine and surgery within the state, in violation of § 71-147(2).

A hearing was conducted on the complaint before a hearing examiner appointed by the Director as well as before the Director himself, who was present during the entire time that the hearing progressed. The hearing was held in conformity with § 71-155, which provided in part that "[t]he proceeding [for the revocation or suspension of a license or certificate] shall be summary in its nature and triable as an equity action." The hearing commenced on September 11, 1989, and concluded on

the morning of September 15. Either in person or by deposition, 19 witnesses testified, and the transcript of the testimony consists of over 700 pages plus 2 volumes of exhibits and pleadings, all of which this court has examined. The findings, conclusions, and order of the Director stated that Davis did in fact maintain a sexual relationship with a patient during her treatment; that he did in fact issue narcotic drugs in the names of two friends of a patient's, knowing that they were for the use of the patient; and that such conduct violated the statutory prohibitions in all respects, and the Director ordered the license of Davis revoked and the registration of Davis for the prescribing of controlled substances revoked.

The petition for review was filed in the district court on July 6, 1990. That court found that the record failed to prove, either by clear and convincing evidence or by the greater weight of the evidence, that Davis had a sexual relationship with patient I. The court found that Davis did perform a physical examination on the male friend of patient II's and that his prescribing of drugs for that person was an acceptable action within the scope of his medical practice, but that Davis continued the prescriptions for an unreasonable period of time without a followup examination. The court also found that he wrote prescriptions for the female friend of patient II's based solely on her complaints of pain, which was a minimally acceptable action within the proper scope of his medical practice, and that although he failed to keep adequate records of the prescriptions written for these two friends of patient II's, the record failed to establish, either by clear and convincing evidence or by the greater weight of the evidence, that Davis had committed fraud with reference to his prescription practice.

The district court reversed the order of the Director revoking the license of Davis to practice medicine and modified the order of the Director revoking the controlled substance registration of Davis and instead temporarily suspended that registration for a period of 3 months, after which time the registration was ordered automatically reinstated.

Section 71-147 provided in part as follows:

A license or certificate to practice a profession may be . . . revoked, or suspended or have other disciplinary

measures taken against it in accordance with section 71-155 when the applicant, licensee, or certificate holder is guilty of any of the following acts or offenses: . . . (2) grossly immoral or dishonorable conduct evidencing unfitness or lack of proficiency sufficient to meet the standards required for practice of the profession in this state . . . (5) practice of the profession (a) fraudulently, (b) beyond its authorized scope . . . (10) unprofessional conduct, which term includes all acts specified in section 71-148 and such other acts as may be defined in rules and regulations adopted and promulgated by the board of examiners in the profession of the applicant, licensee, or certificate holder with the approval of the department . . . .

Although not raised as a specific assignment of error, there is a disagreement between the parties as to the burden of proof necessary to establish guilt in conduct necessary to support disciplinary action. Because this is an essential element in any disciplinary proceeding, we must in the first instance make this determination.

The appellants maintain that the Department's policy has always been to utilize a preponderance of the evidence standard, in accordance with the Department's interpretation of § 71-155. Statutory interpretation is a question of law in connection with which an appellate court has an obligation to reach an independent conclusion, irrespective of the determination made by the court below. *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *Calvert v. Roberts Dairy Co.*, 242 Neb. 664, 496 N.W.2d 491 (1993).

The appellants' position is that since the proceeding has been statutorily defined as having civil and equitable characteristics, a mere preponderance of the evidence is all that is required.

We disagree.

This court defined the standard as applied to attorneys in disciplinary proceedings in *State ex rel. NSBA v. Roubicek*, 225 Neb. 509, 519, 406 N.W.2d 644, 651 (1987):

For the sake of uniformity and clarity, the rule as to the burden of proof in disciplinary proceedings shall hereafter be by clear and convincing evidence, which is that amount

of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. Clear and convincing evidence means more than a preponderance but less than evidence beyond a reasonable doubt. See *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984).

See *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 416 N.W.2d 515 (1987), *cert. denied* 488 U.S. 802, 109 S. Ct. 31, 102 L. Ed. 2d 10 (1988).

While that case alone does not bind the court to application of the same standard to physicians, common sense dictates that the law treat the complainant's burden in the arena of the two professions' disciplinary proceedings similarly. Nevertheless, we examine the dispositions and analyses by other states in these matters.

Wisconsin applies the clear and convincing evidence standard for attorneys, which is of course within the exclusive jurisdiction of the Wisconsin Supreme Court, while the legislature provides a mere preponderance of the evidence standard for physicians. In *Gandhi v. Medical Examining Board*, 168 Wis. 2d 299, 483 N.W.2d 295 (Wis. App. 1992), the Court of Appeals of Wisconsin held that application of the preponderance of the evidence standard to physicians did not violate due process or equal protection. The legislature, the court reasoned, using a separation of powers analysis, does not have to rationalize the differing burden of proof, since the legislature did not create the dual standards. See, also, *Boswell v. Bd. of Veterinary Medicine*, 477 N.W.2d 366 (Iowa 1991); *Eaves v. Board of Medical Examiners*, 467 N.W.2d 234 (Iowa 1991); *In re Polk License Revocation*, 90 N.J. 550, 449 A.2d 7 (1982).

The Supreme Court of Wyoming has recently held, in *Devous v. Bd. of Medical Examiners*, 845 P.2d 408 (Wyo. 1993), that a disciplinary proceeding before a licensing board is an adversary proceeding in which the burden is upon the complainant to present its case and state with precision its charges against the licensee and to establish the charges by clear and convincing evidence. The court cited to a previous Wyoming case, *Fallon v. Wyoming State Board of Medical*

*Exam.*, 441 P.2d 322, 326 (Wyo. 1968), in which the court had stated that " 'fraud will not be imputed to any party when the facts and circumstances out of which it is supposed to arise are consistent with honesty and purity of intention.' "

The Mississippi Supreme Court has held that in disciplinary proceedings before the state board of psychological examiners, charges must be proved by clear and convincing evidence. *St. Bd. of Psychological Ex. v. Hosford*, 508 So. 2d 1049 (Miss. 1987). See, *Hogan v. Mississippi Bd. of Nursing*, 457 So. 2d 931 (Miss. 1984); *Levi v. Mississippi State Bar*, 436 So. 2d 781 (Miss. 1983).

Recently, the California Court of Appeal, in *Silva v. Superior Court (Heerhartz)*, 14 Cal. App. 4th 562, 17 Cal. Rptr. 2d 577 (1993), held that the clear and convincing evidence standard, rather than the preponderance of the evidence standard, applies at hearings on applications for interim orders suspending or imposing restrictions on licenses of medical care professionals. The court reasoned as follows:

In *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856, 185 Cal.Rptr. 601, the court held the "clear and convincing proof to a reasonable certainty" standard of proof applies at Board administrative proceedings to revoke or suspend a medical license. The *Ettinger* court explained that the higher "clear and convincing" standard has been applied in disciplinary proceedings against other professional licensees, such as real estate brokers and attorneys. Although attorney discipline proceedings have a "nature all their own, neither civil nor criminal," nevertheless the purpose of attorney discipline proceedings and doctor license suspension proceedings is identical. "Since it is apparent that the underlying purpose of disciplining both attorneys and physicians is protection of the public, it would be anomalous to require a higher degree of proof in disciplinary hearings involving attorneys or real estate agents than in hearings involving physicians." (*Id.* at pp. 855-856, 185 Cal.Rptr. 601.)

. . . "It is the totality of professional employment opportunity involving vested interest rights which requires

the higher standard." (*[Id.]* at p. 857, 185 Cal.Rptr. 601.) *Silva*, 14 Cal. App. 4th at 569-70, 17 Cal. Rptr. 2d at 580.

The disciplinary proceedings of physicians and attorneys serve the same purpose: protection of the public interest. We see no justification for differentiating between the two professions in this regard and hold that the allegations made in disciplinary proceedings in either case must be proved by clear and convincing evidence.

A review of the record discloses a nearly hopeless conflict in the evidence. Patient I insists that she had an ongoing sexual relationship with Davis on almost every office visit from March 1983 until January 1984. Other professionals who later treated patient I testified that this was what she had told them. Davis categorically denies this claim, and his testimony is corroborated by the testimony of Elizabeth Yager, a practicing psychiatrist who completed a 3-year residency and a 1-year fellowship at the Nebraska Psychiatric Institute during the years 1981 to 1984. During much of the time she was at the institute, she worked with Davis, and she gave as her opinion that during the years 1983 and 1984, when the sexual relationship supposedly was ongoing, she participated with Davis in the conferences with patient I approximately 50 percent of the time and that knowing that other students would sit in on other sessions, she could not imagine Davis' being alone with patient I on more than 30 percent of the visits. It was her testimony that no improper contact by Davis could have occurred.

As to patient I's mental and emotional problems, Davis diagnosed her as having asthma along with an anxiety disorder, a depressive disorder, and a hysterical personality. He described a woman having a hysterical personality as being seductive, flirtatious, coquettish, and sexually promiscuous as a general rule; having relatively poor judgment; usually not having much of a conscience; and tending to be prone to suicidal thinking. He determined that the steroids she was taking for her asthma attacks were giving her a terrible mood and that she would become paranoid and would usually break contact with reality. He said that hysteria causes people to fabricate. The steroids which she was taking, according to Davis, caused her to gain a

"ton of weight," going from 110 pounds up to 180 pounds. According to Davis, hysterical people tend to fall in love with their therapists, and he knew she was in love with him because she told him. She also told him that she was upset because he married his present wife.

Dr. Yager generally agreed with the diagnosis Davis made of patient I. According to Yager, the patient was agitated and anxious, suffering from a borderline personality disorder which caused her to be overly reactive to things. The patient showed a tendency to polarize—either she loved people or she hated them. She was a very dependent person and exhibited a strong, possessive love to the point of jealousy toward Davis. Yager went on to say that with patient I, there is a combination of a woman who is psychotic with an unstable personality who has an infatuation with her doctor, and he is taken away from her, so her anger, her frustration, and her belief from all those years of psychosis come out. According to Yager, the patient probably believed to a great extent that the relationship which she claimed happened actually did happen. Robert Osborne, a physician and psychiatrist called by the State as a witness, said that he agreed with Davis as to what a hysterical personality is. He said such a woman reacts more spontaneously and impulsively to stimuli, has significant problems in relating to people and regarding men, and tends to be flirtatious and coquettish. At the same time, Osborne said, such personalities have difficulty with dependency and overdependency and "have a tendency to ascribe, at times, relationships that don't exist. I mean, they may over-interpret a word, a statement, a look, as meaning more than it does . . . ." The district court, after conducting a de novo review on the record as required by § 84-917(5)(a) and (6)(b), concluded that

> [patient I's] lack of credibility with regard to sex during office visits undermines the credibility of all her accusations concerning sexual activity with the Petitioner [Davis]. Respondents [State] have failed to prove, either by clear and convincing evidence or by the greater weight of the evidence, that the Petitioner had a sexual relationship with [patient I] while she was his patient or at any other time.

Appeals from the district court are required by § 84-918 to be taken in the manner provided by law for appeals in civil cases, and the "judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record." We are unable to find that this particular language has ever been judicially interpreted. However, appeals from boards of adjustment as provided for by Neb. Rev. Stat. § 19-912 (Reissue 1991) are somewhat analogous. That section provides that an appeal from a decision of a board of adjustment may be taken to the district court, which may conduct a hearing with or without the taking of additional evidence and "may reverse or affirm, wholly or partly, or may modify the decision brought up for review. . . . Any appeal from such judgment of the district court shall be prosecuted in accordance with the general laws of the state regulating appeals in actions at law." This court had occasion to interpret the meaning of § 19-912 in *Stratbucker Children's Trust v. Zoning Bd. of Appeals, ante* p. 68, 497 N.W.2d 671 (1993). Citing *Bowman v. City of York,* 240 Neb. 201, 482 N.W.2d 537 (1992), we said:

"[A] district court may disturb a decision of such a board [of adjustment] only if . . . the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. In deciding whether a board's decision is supported by the evidence, the district court shall consider any additional evidence it receives.

". . . .

". . . [A]n appellate court reviews the decision of the district court and . . . irrespective of whether the district court took additional evidence, the appellate court is to decide if, in reviewing a decision of the board of adjustment, the district court abused its discretion or made an error of law. Where competent evidence supports the district court's factual findings, the appellate court will not substitute its factual findings for those of the district court."

*Stratbucker Children's Trust, ante* at 71, 497 N.W.2d at 674. We adopt that reasoning as applicable to the present appeal and declare that under § 84-918, an appellate court, in reviewing a

judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. Adopting that standard, we affirm the judgment of the district court regarding the alleged sexual misconduct of Davis.

We turn next to the issue relating to the prescribing by Davis of drugs for the two friends of patient II's. In this regard, the district court found that Davis wrote prescriptions for controlled substances for the male friend of patient II's based on a physical examination and complaints of pain, which was an acceptable action within the proper scope of his medical practice, notwithstanding the allegation by the State that it was in violation of § 71-147(5)(b). However, the court found that Davis continued to write those prescriptions for an unreasonable period of time without followup physical examination and continued to do so after the friend moved out of the State of Nebraska and that in doing so, Davis unreasonably relied upon patient II to fill those prescriptions and send them on to her friend.

The court found that Davis also wrote prescriptions for controlled substances for the female friend of patient II's based solely on her complaints of pain, which was a minimally acceptable action within the proper scope of his medical practice. The court also determined that Davis failed to keep adequate records of the prescriptions written for the two friends of patient II's, but that Davis was not aware that the patient was intercepting or keeping those drugs for her own use, and that Davis did not participate in any fraudulent scheme to prescribe drugs for either of the friends in order to supply patient II with more drugs than were medically indicated or permitted under Nebraska law. The court concluded that the State failed to prove either by clear and convincing evidence or by the greater weight of the evidence that Davis committed fraud with respect to his prescription practice.

However, in its order, the district court did not completely absolve Davis of all responsibility nor invalidate all sanctions. Its order reads in part as follows:

Paragraph 3 of said decision is modified in its entirety to

provide as follows: The controlled substance registration of Dr. James Allen Davis, Jr., M.D., is temporarily suspended for a period of three months from the date of this Order. After such period of suspension, said registration shall be automatically reinstated. The Director of Health shall devise procedures to be followed by Dr. Davis with respect to prescriptions and record-keeping designed to ensure that Dr. Davis complies with legal and professional requirements for prescribing and monitoring usage of controlled substances. If the Director is not at any time satisfied with Dr. Davis' compliance with the procedures devised hereunder, the Director may order up to, but not exceeding, an additional six months suspension of Dr. Davis' controlled license [sic] registration as necessary to ensure compliance.

The standard of review which we must employ is as previously stated; i.e., where competent evidence supports the district court's factual findings, this court will not substitute its factual findings for those of the district court.

Nevertheless, at the outset we note our recent holding in *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993). Curry was charged with prescribing controlled substances for nonmedical reasons in violation of § 71-147(10),

which reads: "unprofessional conduct, which term includes all acts specified in section 71-148 and such other acts as may be defined in rules and regulations adopted and promulgated by the board of examiners in the profession of the . . . licensee . . . with the approval" of the health department.

Neb. Rev. Stat. § 71-148 (Reissue 1990) reads: "For the purpose of section 71-147, unprofessional conduct shall include any of the following acts," trailed by 15 defining clauses, none of which deal with the prescribing of drugs. . . .

The State acknowledges that neither § 71-148 nor the rules and regulations concerning the practice of medicine "specifically state that prescribing controlled substances for other than medical purposes; continuing to prescribe a controlled substance after the patient is taking more of the

controlled substance than instructed and sharing the controlled substances with others; and prescribing controlled substances to counter the effects of the first controlled substance prescribed is unprofessional conduct." . . . However, in reliance upon the presence of the word "includes" in the statute, the State claims that § 71-147(10) is a broad, inclusive law which embraces Curry's conduct as unprofessional conduct because it violated the practice standards of the medical profession.

*Curry*, 242 Neb. at 700-01, 496 N.W.2d at 517.

In the instant case, there was testimony by a physician, Osborne, that the activities of Davis in overprescribing medications violated the practice standards of the medical profession. However, in *Curry*, this court discussed rules of statutory construction and concluded that "a violation of the practice standards of the medical profession does not define unprofessional conduct for the purposes of § 71-147(10)." 242 Neb. at 703, 496 N.W.2d at 518.

Finally, there was competent evidence to support the factual findings of the district court, and we find no errors in the record of the court's reversal of the order of the Director revoking Davis' license to practice medicine or in the record of the modification by the court of the order of the Director revoking Davis' controlled substance registration.

The appellants argue that it was error for the district court to impose its own penalty by suspending the controlled substance registration of Davis for 3 months rather than remanding the case to the Director for the appropriate disposition. As previously stated, § 84-917(6)(b) authorizes the district court to affirm, reverse, or *modify* the decision of the agency or to remand the case for further proceedings.

We find no error in the judgment of the district court, and it is affirmed.

AFFIRMED.