BELL FEDERAL CREDIT UNION, APPELLANT, V. KATHLEEN CHRISTIANSON ET AL., APPELLEES.

505 N.W.2d 710

Filed October 1, 1993.    No. S-91-635.

Soren S. Jensen and J Russell Derr, of Erickson & Sederstrom, P.C., for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

The claimants, here appellees, are employees of the appellant, Bell Federal Credit Union (Bell), and appealed from a determination by the Commissioner of Labor of the State of Nebraska dated July 14, 1989, which disqualified them from receiving unemployment benefits from June 11 through 24, 1989. The determination was based on a finding that the claimants' unemployment resulted from work stoppage due to a labor dispute within the meaning of Neb. Rev. Stat. § 48-628(d) (Reissue 1988), which stoppage began on June 12 and ended on June 23.

At the time the strike began, Bell employed 115 persons. Of these, a total of 53 employees went on strike. Of the remaining 62 employees, 23 were nonunion management and support personnel. Thirteen of the employees had been hired on a temporary basis prior to the strike, and three additional temporary employees were hired after the strike began. A net reduction of 37 employees occurred as a result of the strike.

The Nebraska Appeal Tribunal heard the claimants' appeal on August 28, 1989, and reversed the commissioner's findings. The tribunal stated that Bell's only evidence of revenue loss resulting from the labor dispute arose out of its witness' speculation that the shifting of personnel among the various departments necessarily resulted in a loss of revenue and went on to say:

> Although the evidence shows that the employer suffered a 15% reduction in teller operations, the evidence also shows that union members had been instructed to make use of automatic teller machines during the strike. Consequently, the Tribunal can only speculate as to whether or not the reduction in teller operations resulted in a loss of revenue. Although evidence was presented to show that certain areas of work, such as the processing of loans following initial applications, the working of overdrawn accounts, the processing of applications for ATM cards and the remittance of money orders and traveler's checks after their issuance, and the follow up of insufficient fund checks suffered disruptions, no evidence was offered to show a resulting financial impact on the employer's operations.

> The Tribunal can only speculate as to the extent or nature of any impact that this shifting of employees may have had on the employer's operations during the labor dispute. Although some transactions may have been delayed, the Tribunal is unconvinced that there was a significant loss in business or profit to the employer during the labor dispute. Speculation that a slowdown in certain operations during the period of the strike necessarily resulted in a loss of business or revenue could as easily be countered by speculation that the employer's

operations were more profitable during the labor dispute because of decreased labor costs.

. . . It should be further noted that the employer, by its own statement, was operating at a reduced, but satisfactory level on June 20, 1989 . . . .

On appeal, pursuant to the Administrative Procedure Act, the district court held that the order of the tribunal finding that Bell's striking employees were eligible for unemployment benefits because Bell did not suffer a "stoppage of work," as that phrase is used in the Employment Security Law, was supported by substantial evidence and affirmed its decision. Bell made its first appeal to this court.

On March 8, 1991, as reported in *Bell Fed. Credit Union v. Christianson*, 237 Neb. 519, 466 N.W.2d 546 (1991) (*Bell Fed. Credit Union I*), this court reversed the judgment and remanded the cause for further proceedings, finding that the district court had utilized the wrong standard of review, i.e., as an error proceeding rather than de novo on the record. This court further concluded that, as a matter of law, it could not be said that a work stoppage did or did not occur.

We held that a work stoppage exists when it is proven that there has been a substantial curtailment of work produced by a labor dispute in an employing establishment.

" 'Substantial' has been defined to mean 'material,' 'important,' 'massive,' or 'considerable in amount.' [Citation omitted.] Accordingly, it becomes difficult to fix any definitive standard by which to gauge when a stoppage of work starts or stops.

"In adopting this approach, its effect was to require a case-by-case review of the particular facts and circumstances unique to each case, because we adopted a fluid test to determine when a *substantial* curtailment of work commences, and we remain convinced that this commonsense approach is both logical and reasonable and is the interpretation and application under similar statutes of other jurisdictions. [Citation omitted.]"

(Emphasis in original.) 237 Neb. at 524, 466 N.W.2d at 549-50.

This court ordered on remand that the district court determine in accordance with the new, fluid test the court had

just enunciated whether substantial curtailment of work had resulted from the labor dispute between Bell and its striking employees.

On remand, the district court reviewed the original record. The district court entered an order on May 28, 1991, affirming the decision of the appeal tribunal as follows:

> Upon a de novo review of the record, and after due consideration of the briefs of the parties, the Court finds:
>
> (a) Generally for the defendants/appellees and against the plaintiff/appellant;
>
> (b) That there was no substantial curtailment of the plaintiff's entire operations and that therefore there was no "work stoppage" because of the labor dispute which did exist;
>
> (c) That the plaintiff's operations, although multi-officed, constituted a single integrated establishment, because of the functional dependency upon the main office of the outlying offices;
>
> (d) That the decision of the Nebraska Appeal Tribunal should be affirmed.

Bell again appeals.

As its sole assignment of error, Bell asserts that the district court erred in finding that competent and substantial evidence existed to support the finding of the appeal tribunal that there was not substantial curtailment of Bell's operations and that, therefore, a work stoppage did not occur as a result of the labor dispute between Bell and the claimants. In fact, of course, the district court reached its own conclusion that a work stoppage did not exist, and therefore, we treat the alleged error as claiming that the district court erred in failing to find a substantial curtailment of Bell's operations.

When the petition instituting proceedings for review under the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the district court de novo on the record. Neb. Rev. Stat. § 84-917(6)(b) (Cum. Supp. 1992). The judgment rendered or final order made by the district court may be reversed, vacated, or modified by the Supreme Court for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1990). See,

*Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993); *Bell Fed. Credit Union I*.

>    An individual shall be disqualified for [unemployment] benefits:
>
>    . . . .
>
>    (d) For any week with respect to which the commissioner finds that his or her total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he or she is or was last employed . . . .

§ 48-628.

An employer contesting unemployment benefits has the burden of proving that it suffered a stoppage of work because of a labor dispute. See, *Bell Fed. Credit Union I*; *IBP, inc. v. Aanenson*, 234 Neb. 603, 452 N.W.2d 59 (1990).

The phrase "stoppage of work" refers to an employer's operations, rather than the employee's labor. *George A. Hormel & Co. v. Hair*, 229 Neb. 284, 426 N.W.2d 281 (1988).

As we commented in *Bell Fed. Credit Union I*, "In the final analysis, the considerations relevant to the determination of a stoppage of work will depend on the unique business involved in a particular case." 237 Neb. at 524, 466 N.W.2d at 550.

An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Davis v. Wright, supra.*

A basic tenet of Nebraska law provides that the party appealing has the responsibility of including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review. Neb. Rev. Stat. § 25-1140 (Cum. Supp. 1992). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991).

Karen Buche, vice president of personnel for Bell, testified before the appeal tribunal that her duties included resource training, payroll, benefits, negotiations, labor, dispute situations, hiring, selection, and recruiting for Bell's 115

employees.

During the strike, when 53 of Bell's employees struck, two of Bell's five Omaha offices were completely shut down, as well as one of the two outstate offices, in order to efficiently redistribute employees (mostly management level) to cover the void left in the customer service operations by those striking. Bell's personnel, collection, marketing, and building maintenance departments were closed. Certain real estate loan applications were accepted but not completed. Only minimal followup on installment loans had been accomplished. Personnel were not able to either follow up on bad checks or remit traveler's checks and money orders.

Buche further testified that the best manner in which to convey the appearance of continued operations was to keep the "Instafacts" telephone account information system and the teller area open, as well as to be available to open new accounts or take any loan applications. However, Instafacts was closed at one office for $2\frac{1}{2}$ days, and there were no new account representatives at any of the locations. Management personnel were attempting to process the new accounts.

Bell was unable to do any of the loan record filing at any location. Real estate loan applications were taken, but none were completed. No processing or monitoring of overdrawn checking accounts were done, nor were any invoices able to be paid. Credit card orders were not processed; that is, if someone needed a new card or an initial card on opening an account, Bell was unable to provide one. Buche went on to testify that they were able to do very little in the way of accident and health insurance sales.

Bell suffered an estimated 15-percent decrease in *teller activity* during the period of the strike. Bell instructed approximately 1,200 members affiliated with the Communication Workers of America and AFL-CIO to utilize automated teller machines, rather than teller personnel, to carry out their credit union transactions. No one who chose to attempt to make his or her deposit or withdrawal at the credit union was denied the opportunity to do so. Buche admitted that she had not looked at any statistics to determine whether there was an increase or decrease in loans made during the strike, but

assumed that when 14 loan officers normally work a location and that work force has been cut down to 2, which was the case, there would be a decrease in activity. Buche also testified that Bell could not have operated with a reduced force much longer than it did.

In order to justify a finding of a work stoppage, it was incumbent upon Bell to demonstrate this in the record. It has failed to do so. It can point only to areas in which the work force was reduced and some operations were temporarily curtailed, but nowhere, short of speculation, is there any support for a determination of a work stoppage applying the definitions with which we must work. The judgment of the district court is supported by competent and substantial evidence, is neither arbitrary nor capricious, and, therefore, is affirmed.

AFFIRMED.

WHITE, J., not participating.