515 N.W.2d 437 (1994)
2 Neb.App. 809
Marjorie J. BALLARD, Appellee,
v.
NEBRASKA DEPARTMENT OF SOCIAL SERVICES, Appellant.
No. A-93-292.
Court of Appeals of Nebraska.
April 19, 1994.
*438 Don Stenberg, Atty. Gen., and Royce N. Harper, Lincoln, for appellant.
Claude E. Berreckman, Jr., of Berreckman & Berreckman, P.C., Cozad, for appellee.
HANNON and MILLER-LERMAN, Judges, and WARREN, District Judge, Retired.
WARREN, District Judge, Retired.
The Nebraska Department of Social Services (Department) appeals the Lancaster County District Court's reversal of the Department's order which denied a day-care license application. The Department had denied the day-care facility license to Marjorie J. Ballard because while she had held a previous day-care facility license she had administered nonprescription medication to children in her care in a manner which allegedly violated the Department's rules and regulations. Ballard appealed the Department's order to the Lancaster County District Court, which reversed and modified the Department's order, finding that under the Department's rules and regulations Ballard could be issued a conditional license, provided she did not administer any medication to *439 children in her care. The Department appeals.

I. STATEMENT OF FACTS
Marjorie J. Ballard became licensed in 1985 by the Nebraska Department of Social Services to provide group day care to children of parents residing in Gothenburg and surrounding communities. Ballard's license was then renewed on April 18, 1991, and the Department conducted an investigation. The Department's investigation included checking the records of the central register for reports of child abuse and neglect. The register had no indication of any reports of child abuse or neglect by Ballard.
On October 8, 1991, the Department revoked Ballard's license by emergency order, pursuant to Neb.Rev.Stat. § 71-1915(3) (Reissue 1990). The Dawson County Attorney had filed a charge against Ballard on October 4, accusing Ballard of negligent child abuse pursuant to Neb.Rev.Stat. § 28-707(1)(a) and (3) (Reissue 1989).
The charge of child abuse arose out of an incident in July 1990, in which Ballard administered a mixture of adult-strength Tylenol, dissolved and diluted in water, to a 9-month-old infant who was placed in her care. The record reflects that the infant was brought to Ballard the evening of July 17 by a neighbor of the infant's mother. The evidence indicates that the child's mother and father had gone to Lexington to be with the infant's paternal grandfather, who had been hospitalized and was dying. The infant's mother telephoned the neighbor and told the neighbor to take the infant over to Ballard to be cared for. In a letter written to the Department, the neighbor stated that, at that time, the child had felt hot to her. During the night, Ballard noticed that the child had a fever of 102 degrees Fahrenheit. Ballard mixed five to seven adult-strength Tylenol pills in 3 to 4 ounces of water and gave the child approximately a teaspoon of the mixture. At the hearing, a pharmacist testified that the approximate strength of such a dose was 200 milligrams. Ballard testified that her family doctor had told her she could mix Tylenol in this manner to administer to children. Ballard administered approximately three-quarters of a teaspoon of the mixture to the infant the next day. The record contains a form filled out and signed by the infant's father which permitted Ballard to administer certain nonprescription medications to the infant, including children's Tylenol. The infant's parents picked up the infant at Ballard's day-care facility at 10 o'clock the next morning. They took him to a doctor, who informed the parents the infant had an ear infection. The infant again was placed in Ballard's care overnight. At some point, the parents administered additional Tylenol, which had been prescribed by the infant's doctor, to the infant. The infant died approximately 3 days after he had been originally placed at Ballard's. The charge brought against Ballard accused her of poisoning the child through an overdose of Tylenol.
Ballard was acquitted of the charge of negligent child abuse on January 7, 1992. Ballard then applied to the Department for a group day-care license. Ballard was then notified by the Department that her application for a group day-care license had been denied. Ballard appealed the Department's action under the Administrative Procedure Act's provision for contested cases, Neb.Rev. Stat. § 84-913 (Reissue 1987). A hearing was held, in part, on March 2.
On March 6, Ballard requested a grant by the Department of alternative compliance, under which she would be granted a license upon the condition that she not administer any medication of any kind to a child in her care. The Department denied Ballard's request on March 10, and the hearing on the denial of Ballard's license was resumed on March 12. The Department then issued an order denying Ballard's appeal.
The order stated that the Department found that Ballard had failed to keep an accurate record of salt tablets which were administered by parents to their own children at Ballard's day care; that Ballard had administered Tylenol to an infant in violation of Department rules, which require medications to be administered from their original containers or from a container labeled for an individual child; and that the administration of Tylenol did not meet reasonable or acceptable *440 clinical standards, which could have been injurious to a child's health. Ballard appealed the Department's order to the Lancaster County District Court.
The district court noted that under the Department's regulation regarding alternative compliance, the Department may grant alternative compliance with its minimum regulations if the Department determines that the alternative offers equal protection to children and meets the intent of the regulation for which alternative compliance is sought. The court found that if Ballard agreed not to administer any medications, then the intent of the regulation regarding administration of medications would be met. The court found that the Department's summary refusal to grant Ballard's request for a license based on alternative compliance was not for cause. The district court reversed the Department's order and directed the Department to issue a license to Ballard with a restriction that she not be allowed to administer medications to any child in her care. The Department appealed the district court's ruling.

II. ASSIGNMENTS OF ERROR
The Department alleges the district court erred (1) when it did not find that the denial was proper based upon the Department's regulation which requires day-care providers to not engage in or have a history of behaviors so as to injure or endanger the health or morals of children; (2) when it disregarded evidence in the record which showed that Ballard had questionable judgment and a pattern of ignoring Department regulations, which was cause for denial; (3) when it considered only the regulation regarding administration of medications as reason for denial of Ballard's license; (4) when it violated the separation of powers doctrine by modifying the order of the Department; and (5) when it failed to give due deference to the Department's decision.

III. STANDARD OF REVIEW
Appeals from the judgment or final order of the district court in cases filed after July 1, 1989, are required by Neb.Rev.Stat. § 84-918 (Cum.Supp.1992) to be taken in the manner provided by law for appeals in civil cases, and the "`judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record.'" Davis v. Wright, 243 Neb. 931, 941, 503 N.W.2d 814, 820 (1993). Under such a standard of review, "an appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings." Id. at 941-42, 503 N.W.2d at 820.

IV. ANALYSIS
In its brief, the Department does not discuss its assigned error that "[t]he court erred in its decision in view of the entire record which showed questionable judgment and a pattern of ignoring regulations vital to the best interests of children and as such was cause for denial of the license." In addition, in its brief, the Department argues the unassigned error that the court "abused its discretion by modifying the order of the Department when the Department was not given a chance to address the issue of the requested alternative compliance by Ms. Ballard." Brief for appellant at 14. This court will address only issues that are both assigned as error and discussed in the brief of the party alleging prejudicial error. Regency Homes Assn. v. Egermayer, 243 Neb. 286, 498 N.W.2d 783 (1993); Hamilton v. City of Omaha, 243 Neb. 253, 498 N.W.2d 555 (1993).

1. DISTRICT COURT'S STANDARD OF REVIEW
Ballard appealed the Department's decision under the Administrative Procedure Act. See Neb.Rev.Stat. § 84-917 (Cum. Supp.1992). When a petition which seeks review of an agency's decision under the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the district court de novo on the record. § 84-917(5)(a). The judgment rendered or final order made by the district court may be reversed, vacated, or modified by an appellate court for errors appearing on the record. § 84-918(3); Bell Fed. Credit Union v. Christianson, 244 *441 Neb. 267, 505 N.W.2d 710 (1993); Davis v. Wright, supra. An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. Id.
The Department argues that the district court erred by basing its standard of review on an unconstitutional interpretation of § 84-917, in violation of the separation of powers doctrine. In support of its argument, the Department cites Scott v. State ex rel. Board of Nursing, 196 Neb. 681, 244 N.W.2d 683 (1976), and Gosney v. Department of Public Welfare, 206 Neb. 137, 291 N.W.2d 708 (1980). We note that Scott is based not on an interpretation of the Administrative Procedure Act, but on a separate statute which set forth the type of review to be used on appeal of the Board of Nursing's denial of a license. Gosney is based on an earlier version of § 84-917, under which the district court was required to review contested cases de novo on the record of the agency, but was then restricted to reversing or modifying the agency's decision if the substantial rights of the petitioner might have been prejudiced because the agency's decision was unconstitutional; in excess of statutory authority; unsupported by competent, material, and substantial evidence in view of the entire record; or arbitrary or capricious. The Gosney court found that
[a]lthough Neb.Rev.Stat. § 84-918 (Reissue 1976) provides that any appeal from a judgment of the District Court under §§ §§ 84-917 to 919 "shall be heard de novo on the record," we have interpreted that language to mean that we are limited to and "governed by the criteria of section 84-917(6), R.R.S.1943, as is the review by the District Court." .... Therefore, our review must be limited to whether or not the order of the [Department] was in "violation of constitutional provisions," whether it was supported by "competent, material, and substantial evidence," and whether it was "[a]rbitrary or capricious."
206 Neb. at 140, 291 N.W.2d at 711-12. The Department urges us to adopt the Gosney standard of review. We find however, that when the Legislature amended § 84-917 in 1989, it eliminated the restrictions on the district court's de novo review for cases filed after July 1, 1989. The Department's argument that the district court used the wrong standard of review is without merit. We find the district court properly reviewed the Department's order de novo on the record.
The Department also argues that the court erred when it did not give deference to the findings of fact by the agency hearing officer and to the decision of the director of the Department. When a court's review of an action taken by an administrative agency is de novo on the record, the court makes independent findings of fact without reference to those made by the agency whose action is being reviewed. Department of Health v. Grand Island Health Care, 223 Neb. 587, 391 N.W.2d 582 (1986). See Haeffner v. State, 220 Neb. 560, 371 N.W.2d 658 (1985).
Where the evidence is in conflict, the court can consider and may give weight to the fact that the agency hearing examiner observed the witnesses and accepted one version of the facts rather than another. Dieter v. State, 228 Neb. 368, 422 N.W.2d 560 (1988). As stated in Department of Health v. Lutheran Hosp. & Homes Soc., 227 Neb. 116, 117, 416 N.W.2d 222, 223 (1987), when an appellate court makes a de novo review, it "does not mean that [the court] ignore[s] the findings of fact made by the board and the fact that it saw and heard the witnesses who appeared before the board at its hearing." The Department interprets Dieter and Lutheran Hosp. & Homes Soc. as a directive to courts which make de novo reviews that the courts must give deference to the agency as fact finder. We note that the language of Dieter is permissive; the Dieter court states that a court may give weight to the fact that the agency hearing officer observed the witnesses, when the evidence is in conflict. We find no indication in the record that the evidence was in conflict. Instead, the conflict between the parties is over the conclusion each argues is to be drawn from the facts in evidence. The district court used the *442 proper standard of review as set forth in § 84-917 (Cum.Supp.1992).

2. BALLARD'S COMPLIANCE WITH LICENSE REGULATIONS
The Department derives its power to regulate day-care facilities from Neb.Rev.Stat. § 71-1911 (Cum.Supp.1992), which provides:
No person shall furnish or offer to furnish a program for four or more children... from families other than that of the provider without having in full force and effect a written license issued by the department upon such terms as may be prescribed by the rules and regulations adopted and promulgated by the department....
....
A license may be denied for cause, after notice and hearing, in accordance with such rules and regulations as may be adopted and promulgated by the department.
Neb.Rev.Stat. § 71-1912 (Reissue 1990) provides:
The department shall adopt and promulgate rules and regulations establishing standards for the physical well-being, safety, and protection of children pursuant to the licensing of providers. Such standards shall insure that the provider of a program is providing proper care for and treatment of the children served and that such care and treatment is consistent with the children's physical well-being, safety, and protection.... Before issuance or renewal of a license, the department shall investigate or cause an investigation to be made, when it deems necessary, to determine if the applicant or person in charge of the program meets or is capable of meeting the physical well-being, safety, and protection standards and the other rules and regulations of the department.
When Ballard was notified by the Department that her application for a group day-care facility license had been denied, the Department stated that it found Ballard was in violation of two regulations, 474 Neb.Admin.Code, ch. 6, § 004.08F (1986), referred to by the Department as "Rule # 54," and 474 Neb.Admin.Code, ch. 6, § 004.08B2 (1986), referred to by the Department as "Rule # 14."
Rule 54 is found under the regulations entitled "Minimum Regulations for Group Day Care Homes," 474 Neb.Admin.Code, ch. 6, § 004.08 et seq. (1986). Rule 54 states in part:
Caregivers shall give or apply medication, either prescription or non-prescription, only with prior written permission and written instructions from the parent. Medication must be in the original container, stored according to the instructions, and clearly labeled for a named child. A record stating the time and amount of medication given or applied and the name of the person who administered the medication must be maintained.
§ 004.08F. Rule 14, also found under the minimum regulations section, states:
The Department shall clear the names of all caregivers and household members, as listed on the application, with the State Central Register of Child Abuse and Neglect before issuing a license.
No license may be issued or remain in effect if there is a conviction for, an admission of, or substantial evidence of crimes involving intentional bodily harm, crimes against children, crimes involving the illegal use of a controlled substance, or crimes involving moral turpitude on the part of the caregivers or any household member. The caregivers and household members shall not engage in or have a history of behaviors so as to injure or endanger the health or the morals of the children in care.
§ 004.08B2. The Department argues that the district court erred when it did not consider the entire record regarding Ballard's denial of a license. The Department states that the "basic premise for denial of Ms. Ballard's application is that she demonstrated a history of behaviors which may injure or endanger the health of children," which was in violation of rule 14. Brief for appellant at 7. We find that the district court, in fact, did find that Ballard had violated both rules 14 and 54. The court found that because Ballard had violated the two rules, the Department *443 had cause to deny her original license application. However, the court found that the Department did not have cause to deny a license based on alternative compliance, because Ballard's proposed alternative compliance with the medication regulation, rule 54, would have eliminated the Department's legal cause to deny the license.

3. ALTERNATIVE COMPLIANCE WITH LICENSE REGULATIONS
The Nebraska Supreme Court has not defined what reasons are sufficient to meet the statutory requirement that a license be denied "for cause" under § 71-1911. In the context of administrative board decisions regarding employment, the Supreme Court has found that "cause" is defined as "`"a reasonable ground of demotion or removal as distinguished from a frivolous or incompetent ground."'" In re Appeal of Levos, 214 Neb. 507, 516, 335 N.W.2d 262, 268 (1983). We must pair the definition of "cause" with the standard of review to be used by the district court, as articulated in Davis v. Wright, 243 Neb. 931, 941, 503 N.W.2d 814, 820 (1993): "`"[A] district court may disturb a decision of such a board ... only if ... the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong...."'" We believe that, as in the case at hand, when the Department denies a caregiver's license application "for cause," such decision must be based upon reasonable grounds, as distinguished from frivolous, arbitrary, or incompetent grounds.
Under § 004.08M, the Department may grant alternative compliance with a minimum regulation "if the Department determines that the alternative offers equal protection to children and meets the intent of the regulation for which alternative compliance is sought." The record reflects that Cathy Kuhlman, a caregiver who was employed by Ballard, held a day-care license for Ballard's facility, for which she applied after Ballard lost her license. One of the conditions the Department put upon Kuhlman, in order for her to receive the license, was that she administer no medications of any type to children in her care. The Department's witness, Dr. Dale W. Ebers, testified at the hearing that if a caregiver did not administer medications to children in her care, it would eliminate the potential danger of side effects from improper or unauthorized administration of medication. The district court found that granting Ballard a license under an alternative compliance condition would satisfy the intent of rule 54 and would ensure the safety of the children in Ballard's care in regard to medication. The court found that as the Department's sole basis for denial was from Ballard's violation of rule 54, which therefore led to her violation of rule 14, if Ballard agreed not to administer medication, then rule 54 would be inapplicable, which therefore would eliminate her violation of rule 14 as well. The district court stated that it found that there was sufficient evidence in the record to show that the Department can administratively accommodate a request like Ballard's for alternative compliance. The Department's decision to deny Ballard's application must be based on reasonable grounds. As the Department has established a regulation which allows alternative compliance, it cannot deny alternative compliance arbitrarily and without reasonable grounds. We find that there is competent evidence to support the district court's findings.

V. CONCLUSION
We find that the district court properly reviewed the Department's order de novo on the record. There is competent evidence in the record to support the district court's finding that the Department denied Ballard a license, with the caveat of alternative compliance, without cause. We therefore affirm.
AFFIRMED.