BEVERLY ENTERPRISES - NEBRASKA, INC., DOING BUSINESS AS COLUMBUS MANOR, APPELLEE, V. COLUMBUS HEALTH CARE, INC., DOING BUSINESS AS CAMBRIDGE COURT CARE CENTER, A NEBRASKA CORPORATION, APPELLANT, AND CITY OF GENOA, DOING BUSINESS AS COUNTRY VIEW CARE VILLAGE, ET AL., APPELLEES. COLUMBUS HEALTH CARE, INC., DOING BUSINESS AS CAMBRIDGE COURT CARE CENTER, APPELLANT, V. NEBRASKA DEPARTMENT OF HEALTH ET AL., APPELLEES.

510 N.W.2d 569

Filed December 28, 1993.    No. A-92-359.

Robert L. Lepp, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellant.

Joseph E. Casson and David C. Beck, of Proskauer, Rose, Goetz & Mendelsohn, and Patricia A. Zieg, of Kennedy, Holland, DeLacy & Svoboda, for appellee Beverly Enterprises - Nebraska.

Don Stenberg, Attorney General, and Linda L. Willard for appellee Nebraska Department of Health.

Dwayne Smith for amicus curiae Columbus Economic Council.

SIEVERS, Chief Judge, and HANNON and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

This case arises from an appeal of the orders of the district court for Lancaster County in two consolidated cases involving the issuance of a certificate of need (CON) to nursing homes in the Columbus area. Columbus Health Care, Inc., doing business as Cambridge Court Care Center (Cambridge), appeals the court's orders which (1) affirmed the decision of the Certificate of Need Review Committee (Review Committee) to grant a CON to Beverly Enterprises - Nebraska, Inc., doing business as Columbus Manor (Beverly), and (2) reversed the decision of the Review Committee to grant a CON to Cambridge. For the reasons recited below, we affirm the orders of the district court.

## ASSIGNMENTS OF ERROR

Cambridge alleges that the trial court erred in reversing the Review Committee's decision in favor of Cambridge by its finding that Cambridge's proposed project did not comply with the Nebraska State Health Plan 1986-1991 (Neb. Dept. of Health 1986), was not the least costly or most effective alternative, and did not meet the needs of the medically underserved. Cambridge also alleges that the court erred in finding that Cambridge was not entitled to judicial review of the Beverly decision because Cambridge is not a "person aggrieved" as defined under the Administrative Procedure Act.

## STANDARD OF REVIEW

When the petition instituting proceedings for review is filed in the district court on or after July 1, 1989, that court's review is to be conducted without a jury de novo on the record of the agency. Neb. Rev. Stat. § 84-917(5)(a) (Cum. Supp. 1992).

(1) An aggrieved party may secure a review of any judgment rendered or final order made by the district court under the Administrative Procedure Act by appeal to the Court of Appeals.

. . . .

(3) When the petition instituting proceedings for review is filed in the district court on or after July 1, 1989, the appeal shall be taken in the manner provided by law for appeals in civil cases. The judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record.

Neb. Rev. Stat. § 84-918 (Cum. Supp. 1992).

An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993).

## BACKGROUND

Beverly and Cambridge both filed applications for CON's with the Nebraska Department of Health (Department) in December 1990. The City of Genoa, doing business as Country

View Care Village (Genoa), also filed an application for a CON at this same time. All projects are located within the state's "Region 10" health planning area.

Cambridge proposed to construct a new 60-bed long-term-care facility in Columbus. Cambridge's facility would consist of 32 private and 14 semiprivate rooms and a child day-care center. The facility would cost an estimated $2.2 million and would provide skilled nursing care for the elderly in Columbus.

In its application, Beverly sought to remodel its existing Columbus facility, which was licensed for 142 beds. Beverly's facility, approximately 25 years old, was operating only 136 beds, due in part to outdated 6-bed and 4-bed wards. Beverly proposed to renovate and expand the facility to provide an additional 20 beds at a cost of approximately $1.2 million or greater.

After review of the applications, the Department made extensive findings and rendered three separate opinions, approving Beverly's application and denying the applications of Cambridge and Genoa. Cambridge and Genoa appealed to the Review Committee regarding the denial of their applications and the grant of Beverly's application.

At a public hearing on May 7 and 8, 1991, each of the three applicants submitted evidence in support of its project. Beverly also submitted evidence in opposition to the Cambridge project. Witnesses testifying at the hearing included Jack Vetter, corporate owner, with his wife, of Cambridge; Bernard Dana, executive vice president of Vetter's corporation; Garold Ulmer, an expert in nursing home construction; Jack Lavelle, administrator of Beverly; Tom Boerboom, vice president of operations for Beverly Enterprises at the national level; and Stephen Frederick, a state health planner.

A copy of the Department's "Findings, Conclusions, and Decision" regarding each application was also received in evidence by the Review Committee. After a comparative review, the Review Committee granted CON's to Beverly and Cambridge. Beverly filed an appeal in the district court, requesting that the court reverse the Review Committee's decision which granted a CON to Cambridge. In response,

Cambridge also filed an appeal in the district court, requesting that the court reverse the Review Committee's decision granting a CON to Beverly.

The district court reversed the decision of the Review Committee granting a CON to Cambridge. The court found that the evidence before the Review Committee indicated that Cambridge's project did not meet all the criteria of the Department's regulations because it did not meet the needs of the medically underserved, did not comply with the state health plan, and was not the least costly nor most effective alternative for delivery of health care services to Region 10.

The court affirmed the decision of the Review Committee granting a CON to Beverly. The court stated that Cambridge was not entitled to judicial review of the Beverly decision because Cambridge was not a "person aggrieved" as contemplated by § 84-917(1). Notwithstanding its conclusion that Cambridge was not a person aggrieved, the court proceeded to the merits and found that Cambridge failed to sustain its burden to show that the Review Committee's grant of a CON to Beverly should be overturned.

## ANALYSIS

Neb. Rev. Stat. § 71-5830(7) (Cum. Supp. 1992) required that a CON be obtained prior to "[a]ny capital expenditure or obligation incurred by or on behalf of a health care facility in excess of the capital expenditure minimum made . . . [i]n preparation for the offering or developing of a new institutional health service, [or] in preparation for initiating a substantial change in an existing health service . . . ." Minimum capital expenditure is defined in Neb. Rev. Stat. § 71-5805.01 (Reissue 1990) as a "base amount of one million two hundred thousand dollars . . . ." Because the cost of each of the proposed projects of Beverly and Cambridge was anticipated to exceed $1.2 million, a CON was required for both projects.

The Nebraska Legislature has declared that the purpose of the Nebraska Health Care Certificate of Need Act is

> to conserve the limited health care resources of personnel and health care facilities in order to provide quality health care to all citizens of the state, to minimize unnecessary

duplication of facilities and services, to encourage development of appropriate alternative methods of delivering health care, to promote wherever appropriate a more competitive health care delivery system, to encourage the provision of high-quality health care which is available and accessible to all citizens of the state, and to maximize the effectiveness of expenditures made for health care.

Neb. Rev. Stat. § 71-5802 (Reissue 1990).

■ The consideration of an application for a CON is governed by three authorities: (1) the Nebraska Health Care Certificate of Need Act, encompassed in Neb. Rev. Stat. §§ 71-5801 through 71-5872 (Reissue 1990 & Cum. Supp. 1992); (2) Department regulations promulgated under the act, 182 Neb. Admin. Code, ch. 2, §§ 005 through 006 (1983); and (3) the state health plan. *Department of Health v. Grand Island Health Care*, 223 Neb. 587, 391 N.W.2d 582 (1986).

■ "[T]he applicant bears the burden of demonstrating in its application that the proposal satisfies all of the review criteria in [the Department] regulations which are appropriate and significant to the proposal." 182 Neb. Admin. Code, *supra* at § 003.02C. However,

[i]n an appeal of a decision to deny a [CON], the person requesting the appeal shall bear the burden of proving that the project meets the applicable criteria . . . . In an appeal of a decision to grant a [CON], the person appealing that decision shall bear the burden of proof that the application does not meet the applicable criteria.

§ 71-5865.

The decision of an appeal board of the Nebraska Certificate of Need Appeal Panel is the final determination of the Department. *Department of Health v. Lutheran Hosp. & Homes Soc.*, 227 Neb. 116, 416 N.W.2d 222 (1987). The decision of the Review Committee is subject to judicial review as provided in §§ 84-917 and 84-918 and in Neb. Rev. Stat. § 84-919 (Cum. Supp. 1992). § 71-5866. Specifically, § 84-917(5)(a) provides that "[w]hen the petition instituting proceedings for review is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without

a jury de novo on the record of the agency."

On appeal, the parties devote considerable attention to the issue of the proper standard of review to be applied by the district court. The petitions were filed in district court on July 18, 1991, and are controlled by the statutory standard applicable to petitions filed after July 1, 1989; i.e., the district court's review shall be de novo on the record. § 84-917(5)(a). In its orders of March 27, 1992, the district court relied on several Nebraska Supreme Court cases decided between 1976 and 1979 and concluded that "the appropriate standard of review for this court under its de novo review of an order granting or denying a Certificate of Need is a determination of whether the order was supported by substantial evidence . . . ." We do not agree with the district court's articulation of the applicable standard of review.

In a series of cases prior to 1989, the Supreme Court held that its de novo review of agency decisions under then-applicable legislation was de novo for substantial evidence. E.g., *Herink v. State ex rel. State Real Estate Commission*, 198 Neb. 241, 252 N.W.2d 172 (1977); *The 20's, Inc. v. Nebraska Liquor Control Commission*, 190 Neb. 761, 212 N.W.2d 344 (1973). Upon "reexamining the statutory scheme for judicial review of an administrative agency's decision" in 1985, the Supreme Court concluded that its review should be "de novo on the record" and that pronouncements inconsistent therewith such "as exemplified by *The 20's, Inc. v. Nebraska Liquor Control Commission* . . . are overruled." *Haeffner v. State*, 220 Neb. 560, 566, 371 N.W.2d 658, 662 (1985). See, also, *Department of Health v. Columbia West Corp.*, 227 Neb. 836, 420 N.W.2d 314 (1988). The first concurrence in *Haeffner* makes clear that "[a] de novo review by [the Supreme Court] necessarily includes finding and weighing facts anew." 220 Neb. at 568, 371 N.W.2d at 663.

In 1989, the Nebraska Legislature passed 1989 Neb. Laws, L.B. 213, which, in part, created § 84-917(5)(a) and which directs the district court to review the appeal de novo on the record. As noted in Beverly's brief and confirmed by review of the legislative history, the introducer of L.B. 213 observed:

Under current law [pre-1989 amendment], the district

court which first reviews an agency decision on appeal applies the narrow criteria found in section 84-917. On appeal to the Supreme Court under current section 84-918, the Supreme Court reviews the district court's judgement de novo on the record, *which is a much broader standard of review*. LB 213 would place the broader standard of review (de novo on the record) in the district court, and then a narrower standard of review in the Supreme Court will be applied (errors appearing on the record). This change would take place with appeals filed in the district court on or after July 1, 1989.

(Emphasis supplied.) Statement of Intent, L.B. 213, Committee on Government, Military, and Veterans' Affairs, 91st Leg., 1st Sess. (Feb. 23, 1989).

Based on the foregoing, we conclude that the district court's standard of review in the instant case, in which the petitions were filed July 18, 1991, was de novo on the record and that its articulation of its standard as de novo for substantial evidence was incorrect. However, it is apparent from its 13-page orders of March 27, 1992, and its subsequent orders of April 21, that the district court weighed evidence and made findings as it was required to do under the proper standard of review. Accordingly, we find no error with respect to the standard of review which the district court actually undertook in its examination of the appeals from the Review Committee.

*CON for Cambridge's Project.*

In its orders, the district court adopted the findings of the Department, which, as the initial body evaluating the applications, had found that Cambridge had failed to meet eight of the criteria required by the regulations to be met before a project is approved. The court specifically noted that the Cambridge project did not meet the needs of the medically underserved, that it did not comply with the state health plan, and that it was neither the least costly nor the most effective alternative for delivery of health care services to Region 10.

The regulations state that "[t]he proposed project must provide access for and contribute to meeting the health-related needs of medically underserved groups in its service area,

particularly low-income persons . . . and the elderly." 182 Neb. Admin. Code, *supra* at § 005.02E3. This regulation was promulgated in response to § 71-5853(1), which mandates that the Department, inter alia,

> by rules and regulations, provide criteria for:
>
> (1) The need that the population served or to be served by the services has for the services, and the extent to which all residents of the area, and in particular low-income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups, and the elderly, are likely to have access to those services . . . .

At the hearing before the Review Committee, Jack Vetter, co-owner of the for-profit corporation proposing to build the Cambridge project, testified that Cambridge would not be medicaid certified. He stated that despite the fact that 50 to 60 percent of the nursing home population in Nebraska is covered by the medicaid program, Cambridge intended to target only the "private-pay" portion of the population and would screen the financial condition of prospective residents to ensure their ability to pay. He acknowledged that in doing so, the proposed facility could dilute the private-pay census at surrounding facilities, resulting in their increased reliance on the lower medicaid rates of payment for their remaining residents.

Subdivision (3) of § 71-5853 mandates that the department provide criteria for the following:

> The contribution of the proposed service in meeting the health-related needs of medically underserved groups, including consideration of the following with respect to the facility as a whole:
>
> (a) The extent to which medically underserved populations currently use the applicant's services in comparison to the percentage of the population in the applicant's service area which is medically underserved, and the extent to which medically underserved populations are expected to use the proposed services if approved;
>
> . . . .
>
> (c) The extent to which medicare, medicaid, and medically indigent patients are served by the applicant.

Failure to meet the criteria promulgated pursuant to *this subdivision* shall not require the disapproval of any application.

(Emphasis supplied.)

On appeal to this court, Cambridge correctly points out that failure to meet the criterion relating to "[t]he extent to which medicare, medicaid, and medically indigent patients are served by the applicant" does not require disapproval of an application. Nonetheless, such a factor is relevant to the decision to approve a CON. Furthermore, the qualifying sentence relating to "this subdivision" pertains only to subdivision (3) of § 71-5853. It does not pertain to subdivision (1), which directs that departmental regulations include criteria relating to the need that the relevant population has for the services and the extent to which all residents of the area, *particularly underserved groups, including low-income persons*, and the elderly, are likely to have access to those services.

Because there is competent evidence to support the factual findings of the district court, we will not substitute our judgment for those findings.

The regulations provide:

The applicant must demonstrate that the proposed project is the least costly of the alternatives for meeting the need established under part 005.01A above, or if it is not the least costly, that it is the most effective alternative for meeting such need. In determining which alternative is the least costly, consideration shall include (but without limitation to) the following: the total cost of the project; charges to all consumers and payers, including government reimbursement programs; the effect of the proposed means of financing on consumers and payers considered as a whole; and, in the case of construction projects (including remodeling), the design, methods, and materials of construction and the long-term energy costs for the project. The most effective alternative is the alternative which makes high-quality health care available and accessible to the greatest number of people in need of the services established as needed under part 005.01A

above, maximizes the effectiveness of expenditures made for health care, minimizes unnecessary duplication of facilities and services, encourages development of appropriate alternative methods of delivering health care, and promotes wherever appropriate a more competitive health care delivery system.

182 Neb. Admin. Code, *supra* at § 005.02A2.

Evidence was presented that the Cambridge project was the most expensive project, both in terms of total outlay and in terms of per-bed costs. There was evidence that the proposed facility would not be available or accessible to the greatest number of people in need of services. This evidence was competent to support the district court's findings that the Cambridge project failed to meet the criteria as set out in § 005.02A2.

*CON for Beverly's Project.*

The district court found that Cambridge was not a person aggrieved under § 84-917(1) because Cambridge's Jack Vetter had conceded at the hearing before the Review Committee that he was not opposed to Beverly's project. Cambridge argues that it is entitled to judicial review as an "affected person" as set forth in the Nebraska Health Care Certificate of Need Act in § 71-5823, which reads in relevant part as follows: "Affected persons shall include . . . health care facilities . . . which prior to the submission of the application for a certificate of need have formally indicated an intention to provide such similar services in the future, either through adopting a plan or filing a letter of intent . . . ."

In addition, "[t]he findings, conclusions, and decisions resulting from the hearing shall constitute the determinations of the department, except that the department, the applicant, or any affected person who has intervened in the matter before the review committee may seek judicial review as provided in sections 84-917 to 84-919." § 71-5866. Section 84-919, in turn, provides that the Administrative Procedure Act is the exclusive means of judicial review of an agency decision, *except as otherwise provided by law*. Therefore, even if Cambridge was not a person aggrieved as defined in § 84-917(1), an issue we

need not decide, it is entitled to judicial review of the actions of the Review Committee as provided by the Nebraska Health Care Certificate of Need Act because it is an affected person that had intervened in the matter before the Review Committee.

The district court also found that Cambridge failed to sustain its burden of showing that the Review Committee's decision to grant a CON to Beverly should be overturned. The court stated that there was substantial evidence that Beverly met all the criteria under the regulations. In addition, essentially no evidence opposing Beverly's CON application was presented at the Review Committee's hearing. Cambridge, even on appeal to this court, objects to Beverly's project only if Cambridge's project is not approved. The district court correctly affirmed the grant of a CON to Beverly.

We affirm the judgments of the district court which reversed the granting of a CON to Cambridge and affirmed the granting of a CON to Beverly.

AFFIRMED.